In the Matter of TYRONE G., Appellant, v FIFI N., Respondent.

In the Matter of EDWARD T., Respondent, v FIFI N., Respondent. TYRONE G., Intervenor-Appellant.

First Department, March 4, 1993

### APPEARANCES OF COUNSEL

*Ann E. O'Shea* of counsel *(Cohen, Weiss & Simon,* attorneys), for appellant/intervenor-appellant.

*Judith Waksberg* of counsel *(Lenore Gittis, Law Guardian),* for infant.

*Randall Carmel* for Edward T., respondent.

### OPINION OF THE COURT

SULLIVAN, J. P.

In each of these Family Court proceedings, one, appellant Tyrone G.'s paternity petition, which has been dismissed, the other, a custody proceeding between the adjudicated father and natural mother in which appellant's application, as the alleged father, to intervene has been denied, appellant seeks to establish his paternity of the child, Annie Tynese Delois N., who was born out of wedlock to Fifi N. on January 10, 1987 and whose original birth certificate did not name a father. The appeals have been consolidated.

Appellant and the mother were not then, and are not now, married to each other or to anyone else. Appellant claims to be the child's father, and Edward T., the petitioner in the custody proceeding, has been adjudicated the child's father. To establish his paternity, appellant, in the custody proceeding, offered evidence of an intimate relationship with the child's mother during the period relevant to conception and his continuing relationship with the child from the time of the birth to the present. He also offered to submit, when they became available, results of blood tests which he had recently undergone to establish paternity.[1]

Appellant and the child's mother have known each other virtually all their lives. They began dating in September of 1984, after the mother's discharge from the Army; in the spring of 1986, she informed him that she was pregnant.

---

1. Appellant asserts in his brief on this appeal that the results of these tests were later made available to the court but the court declined to consider them and that they demonstrate to a 99.93% probability that he is the biological father.

There was never any question, according to appellant, as to the child's paternity. He was at the hospital at the birth and was permitted to see the child, who was being maintained in an incubator because of her exposure, *in utero,* to cocaine.[2]

Both appellant and the mother participated in the choice of a name for the child. "Annie" was chosen in honor of the maternal grandmother. "Tynese" was taken, in part, from appellant's name, Tyrone, and "Delois" is the name of appellant's mother. After the mother's discharge from the hospital, she and appellant continued daily to visit the child, who had to be kept at the hospital because of the cocaine in her system. After the child's release on February 10, 1987, appellant continued to visit her at the maternal grandmother's home.

At about the same time, however, appellant's relationship with the mother began to deteriorate; she was spending more time with Edward T. and becoming more drug dependent. Eventually, in June 1987, the maternal grandmother sent the mother and child to her sister in California in the hope that such a move might curtail the mother's drug usage. Two months later, when appellant went to California to visit the mother and child, he found that Edward T. was with them. Appellant did not see the child again until December of that year, when the mother returned with the child from California. Later that month, appellant moved to Georgia to find work. He continued, however, to maintain contact with the child—speaking to her by telephone and sending cards and presents—while she and her mother were living with the maternal grandmother.

In February of 1989, over 13 months after appellant moved to Georgia, the maternal grandmother, as a result of charges of neglect against the mother because of her continued drug use, became the child's foster mother. On July 3, 1990, the Family Court ordered that proceedings be commenced to terminate the mother's parental rights. Thereafter, on September 24, 1990, Edward T. filed a petition in Family Court asking that he be declared the child's father. An order of filiation was granted that same day on the mother's consent. A corrected birth certificate naming Edward T. as the child's father had been filed about six months earlier.

---

2. Appellant alleges that by the latter part of the mother's pregnancy she "had started" taking drugs, around the same time that she started "hanging out" with Edward T.

On April 10, 1991, appellant filed, *pro se,* a Family Court paternity petition in which he alleged having had sexual intercourse with the mother during the relevant period, resulting in the mother's pregnancy, and that he is the father of the child. The case was assigned to the same Judge who presided over all the other cases involving the child and her mother. That same day, in open court, before appellant could utter a word, the court dismissed the petition, explaining that "[a]nother man had previously been adjudicated the child's father." The court noted, "[U]ntil that order is vacated, which is an extraordinarily difficult proposition, if possible at all, I can't have you seeking the same relief that's already been granted." After suggesting that appellant consult with counsel to confirm its explanation of the law, the court further advised, "In effect, you would have to have [the mother] come in and swear that she committed perjury, which would expose her to criminal charges. I don't think she's going to be especially willing to do that. And this is the way it is." Eventually, on June 29, 1992, a formal order dismissing the paternity petition was entered.

In the interim, after the oral dismissal of appellant's paternity petition, the mother, by counsel, attempted to move by order to show cause to vacate the filiation order naming Edward T. as the child's father. The court, same Judge, refused to sign the order to show cause, noting, "[The mother] admitted in court that [Edward T.] was her daughter's father. She has a history of cocaine abuse with accompanying hallucinations. She cannot now request the vacatur of the order based on her dubious allegations."

At or about the same time, the maternal grandmother, by motion, sought the same relief, which was denied on the ground that she lacked standing to challenge the order of filiation. This Court affirmed *(Matter of Edward T. v Fifi N.,* 184 AD2d 278).

Thereafter, on February 18, 1992, appellant, having retained counsel, moved to intervene in the proceeding commenced in Family Court by Edward T. against the mother on December 20, 1990 for custody of the child. Appellant set forth the facts supporting his claim to paternity, most of which have been alluded to herein and are to be found in the record of that proceeding; he also offered to submit the results of blood tests to which he had voluntarily submitted. His request was also supported by the mother, whose attorney submitted an affirmation on his behalf. Without ruling on appellant's

motion and without his participation, the court continued the custody proceeding and on March 17, 1992 awarded custody of the child to Edward T.

■ ■ The two orders under review, one dismissing appellant's paternity petition and the other denying, on the ground of lack of standing, his motion to intervene, were signed and entered on June 29, 1992 and July 1, 1992, respectively, both only after the commencement of a CPLR article 78 proceeding in the nature of mandamus against the Judge. These appeals followed. We reverse the dismissal of the paternity petition and reinstate the same. The order denying intervention should be affirmed.

■ In an attempt to define the rights of putative fathers in the aftermath of the Supreme Court's decision in *Stanley v Illinois* (405 US 645 [1972]), which reaffirmed the principle that the right to conceive and raise children is an " 'essential' " right *(supra,* at 651, quoting *Meyer v Nebraska,* 262 US 390, 399) and held that fathers of out-of-wedlock children have substantial and cognizable constitutional interests in the custody of their children, rights which are no less protected than those of the mothers, New York's Legislature, in 1976, amended its statutory scheme to include a provision granting standing to commence a paternity proceeding to "a person alleging to be the father" of a particular child (Family Ct Act § 522; *see,* L 1976, ch 665; *see also,* 1976 NY Legis Ann, at 258, 400) any time within 18 years (now 21 years) of the child's birth (Family Ct Act § 517). Prior to 1976, there had been a conflict in authority in this State as to whether a putative father could institute such a proceeding *(see, Joye v Schechter,* 112 Misc 2d 172, 177, quoting *Matter of La Croix v Deyo,* 108 Misc 2d 382, 382-383); in any event, no statutory vehicle for entertaining such a petition existed. The statutory procedure, which is set forth in article 5 of the Family Court Act *(see,* Family Ct Act § 521 *et seq.),* includes provisions for the mandatory joinder of issue *(see,* Family Ct Act §§ 524, 525) a hearing, the opportunity to offer blood tests and testimony *(id.,* §§ 531, 532) and the requirement that an order of filiation shall be made in any case where paternity is found *(id.,* § 542). As a result of the 1976 amendments, courts faced with a petition alleging paternity are now required to determine factually whether there exists a biological connection between the alleged father and the child. *(Id.,* § 521 *et seq.)* If none is found, dismissal of the petition is mandated. *(Id.,* § 541.) A paternity proceeding is commenced by the filing of a verified

petition alleging that the respondent or the petitioner, if he is the person claiming to be the child's father, "is the father of the child and petitioning the court to issue a summons or a warrant". *(Id., § 523.)*

Here, rather than follow the clear statutory guidelines when presented with such a petition—causing the issuance of a summons requiring the respondent to show cause why an order of paternity should not be issued (Family Ct Act § 524), advising the parties of their right to blood tests and ordering the same upon motion of any party or on the court's own motion *(id., § 532)*, conducting a trial *(id., § 531)*, making the requisite findings of fact *(id., §§ 541, 542)*—the court dismissed the petition upon the erroneous view that its adjudication in an earlier proceeding, to which appellant was not a party, foreclosed further inquiry. Since appellant was not a party to that proceeding, he is not bound by it and may commence his own paternity proceeding. *(See, Matter of Cathleen P. v Gary P.,* 63 NY2d 805, 808; *see also, Gramatan Home Investors Corp. v Lopez,* 46 NY2d 481, 485-486.) While, to the extent possible, an adjudication of paternity should be final on the issue of a child's parentage, "such an adjudication may not be binding on [a person who was] not a part[y] to the proceeding and had no opportunity to be heard." *(Matter of Gorton v Gorton,* 123 Misc 2d 1034, 1036.)

If the presumption of legitimacy of a child born within a marriage—one of the strongest in the law *(see, Matter of Findlay,* 253 NY 1, 7-8), albeit rebuttable—does not limit the right of a child's biological father to bring a paternity action *(see, Matter of Gorton v Gorton, supra; see also,* Family Ct Act § 531), an order of filiation should not serve as an insuperable bar to a claim of paternity by one who is a stranger to the proceeding in which the order of filiation was entered.

Nor are appellant's paternity rights in any way dependent upon the mother's acquiescence. *(See, Matter of Leromain v Venduro,* 95 AD2d 80, 83; *see also, Crane v Crane,* 81 AD2d 1033.) An unwed father's right to assert paternity in his own proceeding is separate and independent. *(See, e.g., Matter of Cathleen P. v Gary P., supra,* 63 NY2d 805.) Thus, that the mother gave testimony upon which the cited order of filiation was based is no impediment to appellant's assertion of paternity. In *Matter of Costello v Timothy R.* (109 AD2d 933), a case in point, the Family Court summarily dismissed a paternity petition because "the mother's credibility had been destroyed by her declaration under oath (which she later repudiated) in

which she claimed that another person was the putative father and that she had not had intercourse with anyone else during the possible period of conception". In reversing and remanding for requested blood tests, the Third Department stated, "Implicated in the paternity proceeding is the welfare of a child * * * and general considerations of justice. Such issues are best disposed of within the framework of a fact-finding hearing rather than summarily on motion". *(Supra,* at 934.)

Nor, as Family Court apparently believed, is the mother required to admit that she perjured herself in the prior filiation proceeding. Such a requirement would, in any event, contravene the statute, which expressly provides that the respondent "shall not be compelled to testify." (Family Ct Act § 531.) Nor, contrary to Family Court's view, is it a precondition to appellant's petition that the prior order of filiation be vacated. The statute does not so provide and any judicial engrafting of such a requirement would impermissibly limit appellant's due process rights. That the opportunity exists to vacate the filiation order on the basis of fraud on the part of Edward T. and the mother does not compel the conclusion that appellant must do so in order to exercise his due process rights.

As for the Law Guardian's argument that dismissal of the petition is warranted "in the interests of justice" based upon the doctrine of equitable estoppel, suffice to say the issue was never raised in Family Court where the facts relevant to such a claim might have been demonstrated. Thus, it may not be belatedly raised on appeal. *(Szigyarto v Szigyarto,* 64 NY2d 275, 280; *Douglas Elliman-Gibbons & Ives v Kellerman,* 172 AD2d 307.) This argument is particularly inapt where appellant has been prevented from presenting his own case. In any event, the equitable estoppel argument is formulated from material which is not in the record before this Court in either appeal, to which we are, of course, limited. *(Block v Nelson,* 71 AD2d 509, 511.) In refusing to consider this argument, we do not express, impliedly or otherwise, any opinion as to its merits.

Since the paternity petition in this case meets the statutory requirements and there is no discretion for the dismissal, without a hearing, of such a petition, it was error, as a matter of law, to dismiss the same. The petition is therefore reinstated and the matter remanded for further proceedings before another Judge. In addition, Edward T.

should be joined in the proceeding as a respondent. In view of the order of filiation declaring him to be the child's father, he is a necessary party to this proceeding and must be joined so that all persons whose interests are affected will be before the court (CPLR 1001 [a]; *see, Albert C. v Joan C.,* 110 AD2d 803, 804). We note that the issue of nonjoinder may be raised for the first time on appeal and on the Court's own motion. *(Albert C. v Joan C., supra;* 2 Weinstein-Korn-Miller, NY Civ Prac ¶ 1001.03.)

■ As for Family Court's denial of appellant's motion to intervene in the custody proceeding, he clearly was not entitled to such relief as of right. Insofar as is relevant, CPLR 1012 (a) provides that "any person" may intervene as of right in "any action" when (1) he has a statutory right to do so or (2) representation of the person's interests by the parties to the suit "is or may be inadequate and the person is or may be bound by the [result]." Appellant acknowledges that there is no statute which confers upon him an absolute right to intervene in a custody proceeding, but argues that since the custody proceeding was eventually consolidated with the neglect proceeding against the mother (after intervention was denied) and Family Court Act § 1035 (d)[3] gives him a right to intervene in a neglect proceeding he therefore had a statutory right to intervene. Even assuming, however, that appellant's motion to intervene extended to the neglect proceeding, Family Court Act § 1035 (d) does not afford him any such right in that proceeding because, at the time intervention was sought, appellant was not the "other parent" of the child. Edward T., the child's adjudicated father, was, and it was he who was the proper beneficiary of the statutory right of intervention in the neglect proceeding. A rule allowing anyone claiming to be a parent of a subject child in a neglect proceeding to intervene as of right would wreak havoc on child protective proceedings. Of course, Family Court has discretion to allow intervention

---

3. Insofar as is pertinent, Family Court Act § 1035 (d) provides: "[W]here only one of the child's parents is the respondent, service of the summons and petition shall also be ordered on the child's other parent. The summons and petition shall be accompanied by a notice of pendency of child protective proceeding advising the parents or parent of the right to appear and participate in the proceeding as an interested party intervenor for the purpose of seeking temporary and permanent custody of the child, and to participate thereby in all arguments and hearings insofar as they affect the temporary custody of the child during fact-finding proceedings, and in all phases of dispositional proceedings."

when it perceives that the person seeking the same may have a legitimate claim to parenthood.

Even if appellant could properly claim "other parent" status, he would still not have a right to intervene under the statute since section 1035 (d) permits intervention only "for the purpose of seeking temporary and permanent custody of the child." Section 1035 (d) does not permit the other parent to intervene solely to argue that someone else—as here, the maternal grandmother—should be awarded custody. Appellant never sought custody of the child; indeed, he did not even seek an order of visitation. Thus, Family Court Act § 1035 (d) did not afford appellant a right to intervene in the consolidated proceeding.

Nor was appellant entitled to intervention as of right on the ground that representation of his interests by the parties is or may be inadequate and he may be bound by the result (CPLR 1012 [a] [2]), since he is not legally bound by any judgment in the custody or neglect proceeding. Whether a movant "will be bound by the judgment within the meaning of [CPLR § 1012 (a) (2)] is determined by its *res judicata* effect". *(Vantage Petroleum v Board of Assessment Review,* 61 NY2d 695, 698.) Since appellant was not a party and is not in privity with any party to either of those proceedings, res judicata principles do not bind him to the determination in the custody or neglect proceeding, and he is therefore not entitled to intervention. *(See, e.g., Kaczmarek v Shoffstall,* 119 AD2d 1001, 1002.)

While appellant does not specifically argue that Family Court abused its discretion in denying intervention, he does claim that "an intervention motion is precisely the means by which competing claims of right may properly be considered" and that he need not have established paternity as a condition to intervention. In effect, he argues that discretionary intervention should have been granted. In that regard, Family Court did not abuse its discretion in denying intervention to appellant, who, although claiming paternity, did not seek custody of the child or even visitation. His only interest in the ongoing custody proceeding was his claim of paternity. The adjudication of a naked "right" to be known as the child's father does not seem to be an appropriate consideration in a custody proceeding. It should also be noted in that regard that appellant does not set forth any basis to challenge Family Court's determination as to the best interest of the child in that proceeding.

18

Accordingly, the order of the Family Court, New York County (Bruce M. Kaplan, J.), entered on or about June 29, 1992, which dismissed petitioner's paternity petition, should be reversed, on the law, without costs or disbursements, the petition reinstated and the matter remanded for further proceedings not inconsistent herewith before another Judge. The order of the same court and Judge, entered on or about July 1, 1992, denying the motion of Tyrone G. to intervene, should be affirmed, without costs or disbursements.

ELLERIN, WALLACH, KUPFERMAN and Ross, JJ., concur.

Order of the Family Court, New York County, entered on or about June 29, 1992, which dismissed petitioner's paternity petition is reversed, on the law, without costs or disbursements, the petition reinstated and the matter remanded for further proceedings not inconsistent with the opinion of this Court, before another Judge. The order of the same court and Judge, entered on or about July 1, 1992, denying the motion of Tyrone G. to intervene, is affirmed, without costs or disbursements.