OPINION OF THE COURT
David Demarest, J.
In this special proceeding pursuant to CPLR article 78 petitioner requests an order that respondent Lumb, the St. Lawrence County Family Court Hearing Examiner, comply with section 516-a of the Family Court Act requiring DNA test *1034 ing be ordered upon receipt of petitioner’s challenge to the acknowledgment of paternity. Respondent opposes the relief by answer, dated July 2, 1999. The court renders the following decision and order upon review of the parties’ submissions and oral argument at the court’s July 9, 1999 Special Term.
The facts are relatively simple. Petitioner previously signed an acknowledgment of paternity form shortly after the birth of a child he believed he had fathered. Sometime later petitioner became suspicious of the child’s parentage. It is alleged the baby’s maternal cousin as well as the sister and friends of the baby’s mother advised petitioner and/or his mother that he might not be the baby’s father. Further, it is alleged petitioner recently found a letter addressed to the baby’s mother, dated approximately nine months prior to the child’s birth, which caused him to be suspicious of her being intimately involved with another male around the time of conception.
Petitioner challenged the acknowledgment of paternity pursuant to Family Court Act § 516-a by filing a cross petition in a support proceeding commenced under article 4 of the Family Court Act. The basis for this special proceeding is that despite petitioner’s requests, both written (cross petition) and oral (counsel’s requests), the Hearing Examiner declined to order DNA testing prior to setting the matter down for trial on the issue of whether or not the paternity acknowledgment was obtained on the basis of material mistake of fact and/or fraud.
Petitioner contends that the ordering of DNA testing is a purely ministerial act mandated upon receipt of the petitioner’s challenge and cites the language of the statute in support: “After the expiration of sixty days of the execution of the acknowledgment, either signator may challenge the acknowledgment of paternity in court only on the basis of fraud, duress, or material mistake of fact, with the burden of proof on the party challenging the voluntary acknowledgment. Upon receiving a party’s challenge to an acknowledgment, the court shall order genetic marker tests or DNA tests for the determination of the child’s paternity and shall make a finding of paternity, if appropriate, in accordance with this article” (Family Ct Act § 516-a [b] [emphasis added]). Petitioner contends the verbiage imposes a ministerial act upon the Hearing Examiner such that upon the court’s receipt of a valid challenge based on fraud, duress, or material mistake of fact it must order genetic testing.
Respondent contends the appropriate remedy here is an appeal, not mandamus pursuant to article 78. Since a claimed er *1035 ror of law is reviewable on appeal, the orderly appellate process should not be undermined by utilizing an article 78 special proceeding. (Matter of Pirro v Angiolillo, 89 NY2d 351 [1996]; Matter of McGuire v Spires, 214 AD2d 402 [1st Dept 1995], appeal dismissed 86 NY2d 830 [1995].) Apparently there is concern that if testing is routinely ordered at the outset of any challenge, the statutory language specifically permitting a challenge for “fraud, duress, or material mistake of fact” will be rendered meaningless as will the “burden of proof’ language (Family Ct Act § 516-a [b]). To this end, respondent avers the statutory provision requiring the party challenging the acknowledgment to bear the “burden of proof’ connotes a reasonable interpretation by her that the statute requires a fact-finding hearing in the first instance.
There is a lack of case precedent on this issue and most likely the statute will need to be finally construed by the appellate courts. The judiciary is often challenged with interpreting statutes which may not be clearly worded. Respondent has made some telling arguments which give pause for reflection.
The courts in this State have never been quick to bastardize children, nor to saddle nonparents (absent judicial presumptions found to be in the child’s best interest, such as: res judicata, equitable estoppel, and presumptions of legitimacy) with the concomitant financial obligations which are more properly someone else’s. For these reasons the Legislature has seen fit to impose limitations on authority to order genetic testing in both support and paternity proceedings under the Family Court Act. (See, Family Ct Act §§ 418, 532.)
Specifically, Family Court Act § 439 (b) (proceeding to establish paternity) refers to the language of section 532 (a) for ordering genetic marker and DNA tests: “No such test shall be ordered, however, upon a written finding by the court that it is not in the best interests of the child based on res judicata, equitable estoppel, or the presumption of legitimacy of a child born to a married woman.” Similarly, in support proceedings when paternity is contested, Family Court Act § 418 (a) leaves applications for taking blood grouping tests to the sound discretion of Family Court: “The court, on its own motion or motion of any party, when paternity is contested, shall order * * * genetic marker or DNA marker tests * * * No such test shall be ordered, however, upon a written finding by the court that it is not in the best interests of the child on the basis of res judicata, equitable estoppel or the presumption of legitimacy of a child born to a married woman.” In these situations blood tests are *1036 to be directed only where the issue of paternity has never been conceded, expressly or implicitly, or actually litigated. (See, Montelone v Antia, 60 AD2d 603 [2d Dept 1977].)
Courts, even when faced with a “sufficiently convincing bipod test result,” continue to reject the stance that an order of filiation is unnecessary as a precondition to a support order — referring to such a conclusion as “untenable.” (Clara C. v William L., 181 Misc 2d 241, 252 [Fam Ct, Kings County, Mar. 31, 1999].) Application of principles of estoppel may foreclose an apparent biological father from being awarded an order of paternity. Likewise, there may be a scenario presented which makes it proper to award an order declaring a man to be a father notwithstanding blood test results which exclude him from biological parentage. Most succinctly, “there are rules attendant to the resolution of paternity proceedings that are more than mere formalities — they cannot be ignored solely upon presentation of blood test results which purport to establish biological parentage.” (Supra, at 252.)
The parties acknowledge the “best interest” limitation is absent from the language of the statutory provision at issue. Nor does Family Court Act § 516-a refer the reader to section 532 which contains the best interest limitation. There is a complete lack of acknowledgment in the statutes for the distinction. Yet, the courts are called upon to carry out the intentions of the Legislature. The language of the statute is unequivocal in its commandment — “the court shall order genetic marker tests or DNA tests for the determination of the child’s paternity” (Family Ct Act § 516-a [b] [emphasis added]) upon receipt of a party’s challenge to an acknowledgment. This commandment is equally applicable where an acknowledgment is being challenged more than 60 days after its signing, regardless of the extremely limited bases upon which it may be challenged — fraud, duress or material mistake of fact — for which the challenger bears the burden of proof.
The function of this court is merely to pass on the merits of the special proceeding, i.e., whether the Hearing Examiner should be ordered to order genetic testing upon receipt of petitioner’s challenge of the acknowledgment, prior to conducting a hearing on fraud, duress, or material mistake of fact. For that reason it would be improper to pass on any merits of the challenge, direct a particular course of action, or speculate as to the conduct of the proceedings yet had. However, contrary to petitioner’s assertions in this special proceeding, section 516-a (b) does not direct an order of paternity consistent with those *1037 test results, but rather directs the court to: “make a finding of paternity, if appropriate, in accordance with this article * * * If a party petitions to rescind an acknowledgment and if the court determines that the alleged father is not the father of the child, or if the court finds that an acknowledgment is invalid because it was executed on the basis of fraud, duress, or material mistake of fact, the court shall vacate the acknowledgment of paternity.”
It may very well be that the limited bases for challenging the voluntary acknowledgment — fraud, duress, or material mistake of fact — may provide insight into the absence of the “best interests of the child” inquiry prior to ordering genetic testing. Active misrepresentation or wrongdoing on the part of the nonpetitioner may provide justification for the absence of any limitations in this statutory provision. Otherwise the result may be that the deceived party will, yet again, be victimized. There may yet be another aspect which then Family Court Judge Karen K. Peters alluded to when she declined to issue a warrant or confirm a period of incarceration against a respondent for his failure to comply with a support order because he had not been given notice of the filing of a petition for approval of acknowledgments of paternity: “Any acknowledgment of paternity executed pursuant to section 111-k of the Social Services Law, section 516-a of the Family Court Act, and section 33 (5) of the Domestic Relations Law allows a putative father to voluntarily acknowledge his paternity, be registered with the State Putative Father Registry, and be responsible for support in order to avoid the more burdensome, time-consuming, and costly procedure involved in a petition for paternity and order of filiation. However, since it eliminates the stricter, more comprehensive waiver of rights as discussed in Matter of Department of Social Servs. v John M. (141 Misc 2d 1015), it is fitting that it should be more easily set aside.” (Ulster County Dept. of Social Servs. [Bridgett M.] v Wilbert D., 145 Misc 2d 362, 363 [Fam Ct, Ulster County 1989].)
In light of the foregoing the petition is granted insofar as respondent is directed to order genetic marker tests or DNA tests in accordance with Family Court Act § 516-a.