[803 NYS2d 672]

In the Matter of WESTCHESTER COUNTY DEPARTMENT OF SOCIAL SERVICES, on Behalf of MELISSA B., Appellant, v ROBERT W.R., Respondent.

Second Department, October 31, 2005

APPEARANCES OF COUNSEL

*Charlene M. Indelicato, County Attorney*, White Plains (*Stacey Dolgin-Kmetz* and *Brendan J. McGrath* of counsel), for appellant.

## OPINION OF THE COURT

COZIER, J.

This appeal presents for our consideration two issues of first impression. First, whether Family Court Act § 516-a (b) requires the Family Court to conduct a hearing before ordering a genetic marker test (hereinafter GMT) to determine issues of fraud, duress, or material mistake of fact upon receiving a challenge to an acknowledgment of paternity brought more than 60 days after its execution. Second, where a party meets his burden of establishing fraud, duress, or material mistake of fact, whether the Family Court is then required to conduct a hearing regarding the best interests of the child before ordering a GMT. For the reasons stated herein, we answer both questions in the affirmative.

### Background

On August 3, 1999, the respondent, Robert W.R. (hereinafter the respondent) and Melissa B., the mother of the subject child, Kayli R. (hereinafter the mother) born out of wedlock on August 2, 1999, executed an acknowledgment of paternity in accordance with Public Health Law § 4135-b. The acknowledgment of paternity provided, inter alia, that the parties' signature established the paternity of the child, and would have the same force and effect as an order of filiation entered after a court hearing. Further, the acknowledgment of paternity provided, among other things, that the parties received written and oral notice of their legal rights and the consequences of signing such acknowledgment, which included the obligation to provide support for the child.

Thereafter, in June 2001, the petitioner, Westchester County Department of Social Services, commenced this support proceeding against the respondent in the Family Court, Westchester County, as the mother and the subject child were public assistance recipients.

However, the respondent failed to provide any financial disclosure, failed to comply with the petitioner's demand for in-

terrogatories, and failed to appear for scheduled hearings on July 19, 2001, August 28, 2001, and October 3, 2001. As a result of the respondent's failure to appear on October 3, 2001, the Hearing Examiner (James, Hearing Examiner), after an inquest, determined that the respondent had substantial earnings, imputed income to the respondent, and determined that he was able to pay child support in the sum of $10,000 per month. Thereafter, on October 31, 2001, the Family Court (James, Hearing Examiner), upon the respondent's default, entered an order directing him to pay $10,000 per month in child support, and set the amount of arrears at $190,000.

The respondent filed objections to the October 2001 order of support, arguing that he earned less than the income imputed to him. The respondent is a successful, high-profile rap artist who earned $2.5 million from the sales of his record album in 2000.

On May 1, 2002, the Family Court (Dickerson, J.), denied the respondent's objections, finding, among other things, that the petitioner presented sufficient evidence to support the Hearing Examiner's support order, and that the respondent failed to produce any evidence to contest the income imputed to him. Further, the Family Court concluded, inter alia, that the respondent was evasive with respect to his financial disclosure.

Thereafter, the respondent filed a notice of appeal and moved before this Court by order to show cause, inter alia, to stay enforcement of the order of support pending appeal, and to remit the matter to the Family Court for a GMT. By decision and order on motion dated June 19, 2002, this Court granted that branch of the motion which was for a stay of enforcement of the order of support on condition that, among other things, the respondent pay the sum of $2,500 per month in child support, and denied the remaining branches of the motion.

On appeal, this Court affirmed the order denying the respondent's objections, determining, inter alia, that the respondent had failed to demonstrate a reasonable excuse for his default and had failed to provide any explanation for his failure to comply with financial disclosure.

On March 15, 2002, during the pendency of the appeal, the mother's public assistance case was closed, and the order of support was amended, directing the respondent to make payments directly to the mother rather than to the petitioner. However, on May 22, 2003, the mother reopened her public assistance case and reassigned to the petitioner her rights to

receive child support. Thereafter, in July 2003, the mother filed a petition for violation of the support order, alleging, inter alia, that the respondent wilfully failed to obey such order, and that the respondent was approximately $140,000 in arrears for child support.

The violation petition was scheduled to be heard by the Family Court on September 3, 2003, and the petition was amended at such time to add the petitioner as a party since the mother and child had resumed receiving public assistance. The violation petition was also modified on September 3, 2003, to allege that as of August 15, 2003, the respondent owed the petitioner $280,000 in child support arrears, and had failed to pay 100% of all nonreimbursed medical expenses. However, the respondent failed to appear on September 3, 2003, and on October 1, 2003, the Family Court issued a warrant for his arrest.

The matter was adjourned to February 26, 2004, for a willfulness hearing, and the respondent again failed to appear. The Support Magistrate (Jordan, Support Mag.), determined that the petitioner established a prima facie case of willfulness based upon the respondent's failure to pay child support. The Support Magistrate also determined that the respondent's blatant disregard of the support order constituted contumacious conduct. After making such findings, the Support Magistrate, inter alia, awarded the mother $140,000 in support arrears, awarded the petitioner $280,000 in support arrears, and ordered the respondent to post an undertaking in the sum of $120,000, representing 12 months of child support at $10,000 per month.

The Support Magistrate also directed that the parties appear before the Family Court (Bellantoni, J.), for a confirmation hearing on March 15, 2004, and recommended, inter alia, that the respondent be incarcerated for a period of six months with a purge amount of $500,000.

On March 15, 2004, the respondent appeared for the confirmation hearing due to his arrest on the outstanding warrant and, through his attorney, made an oral application for a GMT, pursuant to Family Court Act § 418. In addition, he sought to challenge the acknowledgment of paternity on the grounds of fraud and duress. Although the respondent acknowledged that Family Court Act § 418 prohibited a court from ordering a GMT where it was not in the best interests of the child on the basis of equitable estoppel, the respondent nonetheless maintained that such doctrine should not prevent the court from ordering the subject test as he had no meaningful contact with the child after her

birth. The petitioner opposed the application, arguing, among other things, that the court should invoke the doctrine of equitable estoppel to preclude the respondent from challenging paternity. Further, the petitioner argued, inter alia, that Family Court Act § 418 required that the Family Court consider whether it was in the child's best interests to permit the respondent to challenge paternity before ordering a GMT.

After considering the parties' arguments, the Family Court determined that the respondent knowingly, consciously, and voluntarily disregarded his child support obligations and directed the parties and the child to submit to a GMT, without considering the issue of fraud or the best interests of the child. The Family Court also determined, inter alia, that Family Court Act § 516-a (b) required a court to order such a test upon a challenge to an acknowledgment of paternity, and interpreted that provision as requiring the respondent to prove fraud, duress, or mistake of fact only after the court ordered the GMT and obtained the results.

On appeal, the petitioner argues that the Family Court should have conducted a hearing to determine the issues of fraud and the best interests of the child before ordering a GMT. We agree.

## Discussion

Under Family Court Act § 516-a (a) "[a]n acknowledgment of paternity executed pursuant to . . . section four thousand one hundred thirty-five-b of the public health law shall establish the paternity of and liability for the support of a child pursuant to this act [and] [n]o further judicial or administrative proceedings are required to ratify an unchallenged acknowledgment of paternity."

Family Court Act § 516-a (b)* further provides, in relevant part, that:

> "An acknowledgment of paternity executed pursuant to . . . section four thousand one hundred thirty-five-b of the public health law may be rescinded by either signator's filing of a petition with the court to vacate the acknowledgment within the earlier of sixty days of the date of signing the acknowledgment or the date of an administrative or

---

* Although not relevant to this appeal, it is important to note that the language set forth in Family Court Act § 516-a (a) and (b) is analogous to Public Health Law § 4135-b (1) (a).

a judicial proceeding (including a proceeding to establish a support order) relating to the child in which either signator is a party . . . *After the expiration of sixty days of the execution of the acknowledgment, either signator may challenge the acknowledgment of paternity in court only on the basis of fraud, duress, or material mistake of fact, with the burden of proof on the party challenging the voluntary acknowledgment.* Upon receiving a party's challenge to an acknowledgment, *the court shall order genetic marker tests or DNA tests for the determination of the child's paternity and shall make a finding of paternity, if appropriate, in accordance with this article* . . . If a party petitions to rescind an acknowledgment and if the court determines that the alleged father is not the father of the child, or *if the court finds that an acknowledgment is invalid because it was executed on the basis of fraud, duress, or material mistake of fact, the court shall vacate the acknowledgment of paternity.*" (Emphasis added.)

As the respondent did not seek to challenge the acknowledgment of paternity within 60 days of his voluntary execution of the document, the respondent had the burden of establishing fraud, duress, or material mistake of fact in accordance with Family Court Act § 516-a (b). However, Family Court Act § 516-a (b) is silent as to when the respondent is required to present evidence demonstrating such fraud, duress, or material mistake of fact.

The Family Court herein interpreted Family Court Act § 516-a (b) as requiring the court to order a GMT upon receipt of a challenge to an acknowledgment of paternity and relied upon the case of *Wilson v Lumb* (181 Misc 2d 1033 [Sup Ct, St. Lawrence County 1999]) in reaching its determination.

In *Wilson v Lumb* (*supra*), the petitioner challenged an acknowledgment of paternity after the expiration of 60 days of his voluntary execution of such document during the course of a support proceeding. However, the hearing examiner in *Wilson* declined to order a GMT before setting the matter down for trial on the issue of whether or not the acknowledgment of paternity was executed on the basis of fraud and/or material mistake of fact.

Thereafter, the petitioner in *Wilson* commenced a proceeding pursuant to CPLR article 78 to compel the hearing examiner to

order a GMT, arguing that the ordering of such test was a ministerial act mandated upon receipt of a challenge to paternity. The Supreme Court granted the petition in *Wilson* and directed the hearing examiner to order the GMT in accordance with Family Court Act § 516-a (b). The Supreme Court in *Wilson* concluded that the language of Family Court Act § 516-a (b) required the Family Court to order a GMT upon receipt of a challenge to an acknowledgment of paternity and before conducting a hearing on fraud, duress, or material mistake of fact, even where the challenge was made after the 60-day statutory limit. In particular, the court concluded that the language of Family Court Act § 516-a (b) was "unequivocal in its commandment [that] 'the court *shall* order [GMT's] or DNA tests for the determination of the child's paternity' upon receipt of a party's challenge to an acknowledgment" (*id.* at 1036, quoting Family Ct Act § 516-a [b] [citation omitted]), regardless of whether the challenge was made before or after the 60-day statutory limit.

The *Wilson* court also noted that Family Court Act § 516-a (b) was silent as to whether a court was required to conduct a hearing on the issues of fraud, duress, or material mistake of fact before ordering such test. Although the court recognized that Family Court Act § 418 (support proceeding where paternity is contested) and Family Court Act § 439 (b) (proceedings to establish paternity), which govern GMTs and DNA tests, both expressly state that "[n]o such test shall be ordered, however, upon a written finding by the court that it is not in the best interests of the child on the basis of res judicata, equitable estoppel or the presumption of legitimacy of a child born to a married woman," the court also noted that Family Court Act § 516-a (b) was silent with respect to the best interests of a child (*id.* at 1035-1036).

However, we find that the court's interpretation of Family Court Act § 516-a (b) in *Wilson,* and its adoption by the Family Court herein, is contrary to the obvious and natural meaning, as well as the general intent of the statute.

In construing a statute, "each part of a statute is to be given meaning and be interpreted so as to avoid absurd results" (*Matter of Anderson v Board of Educ. of City of Yonkers,* 46 AD2d 360, 364 [1974], *affd* 38 NY2d 897 [1976]; *see* McKinney's Cons Laws of NY, Book 1, Statutes §§ 92, 145). A general rule of statutory interpretation is to provide a construction which harmonizes the various provisions of a statute with each other

and with the general intent of the statute (*see* McKinney's Cons Laws of NY, Book 1, Statutes §§ 96, 97, 98 [a]; *Matter of Notre Dame Leasing v Rosario,* 308 AD2d 164, 171-172 [2003], *affd* 2 NY3d 459 [2004]; *Matter of Anderson v Board of Educ. of City of Yonkers, supra* at 364-365).

Moreover, the court must construe statutory language according to its natural and most obvious meaning (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 94) while considering "the mischief sought to be remedied . . . and . . . [construing] the act in question so as to suppress the evil and advance the remedy" (McKinney's Cons Laws of NY, Book 1, Statutes § 95).

As the petitioner correctly contends, the Family Court's interpretation of Family Court Act § 516-a (b) would permit the respondent to present proof of fraud, duress, or material mistake of fact subsequent to the disclosure of GMT results. In the event that the results of such tests excluded the respondent herein as the biological father, the Family Court would be required to vacate the acknowledgment of paternity (*see* Family Ct Act § 516-a [b]) in the absence of any showing of fraud, duress, or material mistake of fact by the respondent, which is contrary to the express language of the statute (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 144; *cf. Sean H. v Leila H.,* 5 Misc 3d 315 [Sup Ct, Bronx County 2004] [DNA testing confirming that another man was child's biological father obviated need for continued testimony regarding fraud since statute explicitly provided that court shall vacate acknowledgment where it finds that the alleged father is not the biological father]).

Family Court Act § 516-a (b) unequivocally states, inter alia, that either signator may rescind the acknowledgment of paternity within 60 days of signing the acknowledgment by filing a petition to vacate the acknowledgment, and further provides, among other things, that after the expiration of 60 days of its execution, either party may challenge the acknowledgment of paternity only on the basis of "fraud, duress, or material mistake of fact," with the burden of proof on the party challenging the acknowledgment. Accordingly, the natural and obvious meaning of Family Court Act § 516-a (b) is that the party seeking to vacate the acknowledgment of paternity more than 60 days following its execution has the burden of establishing fraud, duress, or material mistake of fact.

While Family Court Act § 516-a (b) explicitly provides that a party seeking to challenge a voluntary acknowledgment more than 60 days following its execution has the burden of proof in

establishing fraud, duress, or material mistake of fact, the Family Court's interpretation herein of the statute would result in vacatur of the acknowledgment of paternity upon a ground other than fraud, duress, or material mistake of fact, as set forth under the statute. In addition, such an interpretation of Family Court Act § 516-a (b) would negate the requirement that the respondent carry the burden of proof, as well as render the 60-day statutory limit of no force or effect.

Although Family Court Act § 516-a (b) is silent as to whether the Family Court is required to conduct a hearing on fraud, duress, or material mistake of fact before ordering a GMT, the most natural and obvious meaning of the statutory provision at issue is that the court shall order a GMT and make a finding of paternity only if it is appropriate. This interpretation is supported by the language and structure set forth in the statutory phrase "the court shall order [GMTs] or DNA tests for the determination of the child's paternity and shall make a finding of paternity, *if appropriate,* in accordance with this article" (Family Ct Act § 516-a [b] [emphasis added]).

Consistent with the statutory language, in the event that the respondent fails to meet the burden of proof on the issue of fraud, duress, or material mistake of fact, the court need not order a GMT to determine the child's paternity. Accordingly, we find that Family Court Act § 516-a (b) requires the court to conduct a hearing to determine the issues of fraud, duress, or material mistake of fact before ordering a GMT. Such an interpretation would give effect to the natural and obvious meaning of the statute (*see* McKinney's Cons Laws of NY, Book 1, Statutes §§ 94, 231), as well as further the statutory purpose of requiring the respondent to meet the burden of proof where the challenge to the acknowledgment of paternity is made more than 60 days after its execution (*see* Family Ct Act § 516-a [b]; McKinney's Cons Laws of NY, Book 1, Statutes § 98 [a]).

With respect to the Family Court's application of the best interests standard in paternity challenges, Family Court Act § 516-a (b) does not expressly reference such standard. However, it was imperative for the Family Court to construe such statute together with Family Court Act §§ 418 and 532, which govern GMTs and which are in pari materia (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 221; *Matter of Allstate Ins. Co. v Libow,* 106 AD2d 110, 117 [1984], *affd* 65 NY2d 807 [1985]). Both Family Court Act §§ 418 and 532 provide, inter alia, that GMTs will not be ordered upon a written finding of the court that it is

not in the best interests of the child, on the basis of equitable estoppel.

The doctrine of equitable estoppel may be invoked to preclude a father, such as the respondent herein, from denying paternity to avoid support obligations where the invocation of the doctrine is in the best interests of the child (*see Matter of Charles v Charles,* 296 AD2d 547, 549 [2002]; *Ocasio v Ocasio,* 276 AD2d 680 [2000]; *Brian B. v Dionne B.,* 267 AD2d 188 [1999]). Here, there was evidence before the Family Court that the child, nearly five years of age at the time of the subject challenge, recognized the respondent as her father and that the child enjoyed a relationship with him and members of his family. Although the Family Court sought to hold a best interests hearing after obtaining the results of the GMT, this procedure was in direct conflict with Family Court Act §§ 418 and 532. Further, such a procedure is in direct contravention of the primary purpose of the Family Court Act, which is to protect and promote the best interests of the child (*see McMahon v Thompson,* 68 AD2d 68, 70 [1979]).

We note that the Family Court, Kings County, correctly concluded in *Matter of Mary R. v Sidi M.T.* (NYLJ, Apr. 6, 2004, at 20, col 1 [Fam Ct, Kings County, Morgenstern, J.]), that the issue of equitable estoppel should be resolved before ordering a GMT. The respondent in *Mary R.* executed an acknowledgment of paternity and sought to challenge paternity nearly 10 years after the child's birth. The hearing examiner in *Mary R.* ordered a GMT, which excluded the respondent as the child's biological father, and transferred the matter to the Family Court to adjudicate the issue of equitable estoppel. The Family Court in *Mary R.* determined that the hearing examiner should have resolved the issue of equitable estoppel before ordering a GMT, and that the respondent had the burden of proving the invalidity of the acknowledgment at the commencement of the fact-finding hearing. In fact, the Family Court determined in *Mary R.* that it would have ordered the respondent to meet his burden of proof regarding the invalidity of the acknowledgment of paternity if the case had been transferred to the court at the commencement of the proceeding.

Although the GMT in *Mary R.* excluded the respondent as the biological father, the Family Court nonetheless concluded that it was not precluded from determining the issue of equitable estoppel. The Family Court in *Mary R.* invoked the doctrine of equitable estoppel after finding the existence of a

recognizable and operative parent-child relationship which commenced at birth and continued to develop over the years.

As the Family Court determined in *Mary R.*, the respondent herein was required to prove the invalidity of the acknowledgment of paternity. In the event that the respondent failed to sustain his burden on the issue of fraud, duress, or material mistake of fact, he would not be entitled to a GMT. However, as the Family Court further determined in *Mary R.*, if the respondent met his burden of proof on the issue of fraud, duress, or material mistake of fact, the Family Court was then required to consider the best interests of the child before ordering a GMT.

Accordingly, we hold that Family Court Act § 516-a (b) requires the court to conduct a hearing before ordering a GMT to determine the issues of fraud, duress, or material mistake of fact upon receiving a challenge to an acknowledgment of paternity made more than 60 days following its execution. We further hold that where a party meets his or her burden in establishing fraud, duress, or material mistake of fact, the court is then required to conduct a hearing on the best interests of the child before ordering a GMT.

Therefore, in light of the foregoing, the order should be reversed, on the law, the application should be denied, and the matter remitted to the Family Court, Westchester County, for a hearing in accordance herewith.

SCHMIDT, J.P., ADAMS and S. MILLER, JJ., concur.

Ordered that the order is reversed, on the law, with costs, the application is denied, and the matter is remitted to the Family Court, Westchester County, for a hearing in accordance herewith.