OPINION OF THE COURT
Dakota D. Ramseur, J.
Respondent mother Isabel M. filed an objection to Support Magistrate Kemp J. Reaves’ orders of dismissal dated May 17, 2016.[1] In her objection, respondent contends that the Support Magistrate erred in denying her the opportunity to demonstrate, through court-ordered DNA testing, that petitioner Mar-tives G. is the subject child Milciades S.’s biological father. Respondent argues that her son is now “in limbo” because his biological father’s name does not appear on the birth certificate despite being the only father the child has known.
As to the timeliness of her objection, respondent contends that she returned to court “the very next day” to file an objection, but was instructed by the Help Center to instead file a new petition. Respondent argues that the poor translation during the fact-finding hearing prevented her from understanding the proceeding. Respondent contends that she expected the Support Magistrate to order a DNA test, but he dismissed both petitions.
For the reasons set forth below, respondent’s objection is granted in part.
Procedural History
A review of the court file and the mechanical record of the proceedings reveals the following:
On May 20, 2015 petitioner filed a petition seeking to establish his paternity of the subject child. The matter was calendared for return of process on June 23, 2015.
On June 23, 2015 petitioner and respondent both appeared before the Support Magistrate and waived their right to counsel. The Support Magistrate deemed the issue joined. Respondent testified that she is the subject child’s mother, and that she and petitioner reside together. Respondent submitted to the court a copy of the child’s birth certificate in which Mil-ciades S. (Mr. S.) is named as the father, but respondent testified that she fabricated the father’s name. When asked who signed Mr. S.’s name on the birth certificate, respondent testi- *578 fled that she believed that she may have signed the name but did not know whether an acknowledgment of paternity existed. Respondent testified that she was not married on April 2, 2004 when the child was born, but later married an individual named Sal Z. The Support Magistrate assigned an Attorney for the Child (the AFC) to address any estoppel issues and adjourned the matter to October 7, 2015. Thereafter, the court, having received confirmation from the Support Collection Unit that an acknowledgment of paternity existed, directed respondent to file a petition to vacate the acknowledgment of paternity.[2]
On June 24, 2015 respondent filed a petition to vacate the acknowledgment of paternity. In her petition, respondent contends that because she was angry with the child’s biological father, she allowed someone else to sign the acknowledgment of paternity.
On October 7, 2015 petitioner and respondent appeared before Support Magistrate Reaves for fact-finding to establish paternity and for return of process on respondent’s petition to vacate the acknowledgment of paternity. Respondent testified that Mr. S. signed the acknowledgment of paternity in which he is named as the father, that he does in fact exist, and that he currently resides in the Dominican Republic. According to respondent, Mr. S. was served with her petition to vacate the acknowledgment of paternity. The Support Magistrate requested proof of service and thereafter deemed service complete.[3]
When asked why she previously testified under oath that Mr. S. did not exist, respondent testified that she was nervous. Respondent testified that she has a phone number for Mr. S.’s sister. When asked if Mr. S. is the biological father of the subject child who shares his name, respondent testified that Mr. S. is not the child’s father. Thereafter, the Support Magistrate adjourned both matters to January 8, 2016 for fact-finding and assigned a new AFC. The Support Magistrate directed respondent to mail a copy of the electronic testimony application to Mr. S.’s sister in the Dominican Republic.
*579 On January 8, 2016 petitioner and respondent appeared before the Support Magistrate for fact-finding on their respective petitions. Neither Mr. S. nor the AFC appeared. Petitioner testified that he and respondent have been in a relationship for six years and have resided together for the past two years. The Support Magistrate adjourned the matter to April 13, 2016 for Mr. S. to appear by phone and assigned a new AFC to file a report regarding any potential estoppel issues.
On April 13, 2016 petitioner and respondent appeared before the Support Magistrate for fact-finding on their respective petitions, but Mr. S. did not appear. The AFC also appeared but reported that he had not interviewed the child. Respondent testified that she mailed the electronic testimony application to Mr. S.’s sister, but that Mr. S.’s sister had not been able to locate him. In response to the Support Magistrate’s questioning, petitioner and respondent testified that they had lived together for approximately three years and had been “together” for approximately 10 or 12 years. The Support Magistrate adjourned both matters to May 17, 2016 for a report from the AFC regarding any estoppel issues and for fact-finding.
On May 17, 2016 petitioner and respondent appeared before the Support Magistrate for fact-finding on their respective petitions. The AFC also appeared. When asked what had changed since Mr. S. signed the birth certificate and the acknowledgment of paternity, respondent testified that as the child has grown, she came to recognize that the child needs his father’s last name.
When asked why petitioner believes that he is the child’s father, despite the fact that the child bears another man’s name, respondent testified that petitioner realized “right away” that he was the child’s father. However, during “that” time, petitioner and respondent were mad at each other and Mr. S. was “in the picture.” Respondent further testified that, as it was a difficult time period for her, she wanted Mr. S. to sign the birth certificate. Based on respondent’s testimony, the Support Magistrate concluded that respondent “has unclean hands” and failed to demonstrate fraud, mistake of fact or duress and, thus, failed to establish her burden on her petition to vacate the acknowledgment of paternity. The AFC agreed with the Support Magistrate’s conclusion that there was no basis to vacate the acknowledgment of paternity.
Thereafter, the Support Magistrate dismissed respondent’s petition. As to petitioner’s paternity petition, the Support Mag *580 istrate held that petitioner’s ability to establish his paternity for the subject child is contingent upon respondent successfully challenging the existing acknowledgment of paternity in which Mr. S. is named the father. Consequently, the Support Magistrate concluded that petitioner’s paternity petition must also be dismissed as respondent did not prevail on her petition to vacate the acknowledgment of paternity. Respondent now objects to the dismissal of both petitions.
Law
Timeliness
Pursuant to section 439 (e) of the Family Court Act,
“[s]pecific written objections to a final order of a support magistrate may be filed by either party with the court within thirty days after receipt of the order in court or by personal service, or, if the objecting party or parties did not receive the order in court or by personal service, thirty-five days after mailing of the order to such party or parties.”
Here, the final orders of dismissal to which respondent objects are dated May 17, 2016 and were, presumably, entered on that same date. Respondent filed her objection with the court on October 3, 2016. As respondent is a party to both paternity cases, she had standing to file an objection to the dismissal of both petitions.
In her objection, respondent contends that she returned to court “the very next day” to file an objection but was instructed by the Help Center that it was best to file a new petition. A review of the electronic court file reveals that respondent filed two new petitions on July 15, 2016: a petition to vacate the existing acknowledgment of paternity and a petition to establish petitioner’s paternity of the subject child. Although respondent’s objection appears to be untimely on its face, there is no information in the court records indicating the date of the order of dismissals’ mailing or delivery. Absent such information, this court is unable to discern whether, at the time of the filing of respondent’s objection, 35 days had elapsed. As such, this court finds that denial based on untimeliness of the objection is not proper (see Matter of Neu v Davidowitz, 27 AD3d 473 [2d Dept 2006]).
Acknowledgment of Paternity
Family Court Act § 516-a (a) provides that an acknowledgment of paternity executed pursuant to Social Services Law *581 § 111-k[4] or Public Health Law § 4135-b[5] establishes the paternity of and liability for the support of a child. Under Family Court Act § 516-a (b) (i),
“the signatory may seek to rescind the acknowledgment by filing a petition with the court to vacate the acknowledgment within the earlier of sixty days of the date of signing the acknowledgment or the date of an administrative or a judicial proceeding . . . relating to the child in which the signatory is a party.”
Although Family Court Act § 516-a permits a signatory to an acknowledgment of paternity to challenge the acknowledgment in court after the expiration of the time limits set forth in Family Court Act § 516-a (b) (i), “[a] party seeking to challenge an acknowledgment of paternity more than 60 days after its execution must prove that it was signed by reason of fraud, duress, or material mistake of fact” (Matter of Sidney W. v Chanta J., 112 AD3d 950, 952 [2d Dept 2013], citing Matter of Angelo A.R. v Tenisha N.W., 108 AD3d 560 [2d Dept 2013]; see also Family Ct Act § 516-a [b] [iii]). “If the petitioner meets this burden, the court is required to conduct a further inquiry to determine whether the petitioner should be estopped, in accordance with the child’s best interest, from challenging *582 paternity” (Matter of Derrick H. v Martha J., 82 AD3d 1236, 1237 [2d Dept 2011]; Matter of Andre Asim M. v Madeline N., 103 AD3d 500, 501 [1st Dept 2013]; Matter of Oscar X.F. v Ileana R.H., 107 AD3d 795, 796 [2d Dept 2013]). Upon concluding that estoppel is not warranted, the court is required to order genetic marker tests or DNA tests for the determination of the child’s paternity (id.; Family Ct Act § 516-a [b] [iii]).
Where a party seeking to vacate an acknowledgment of paternity fails to satisfy their burden of establishing that the acknowledgment of paternity was signed under fraud, duress, or a material mistake of fact, the court need not order DNA testing and dismissal of the petition is proper (see Matter of Miskiewicz v Griffin, 41 AD3d 853 [2d Dept 2007] [holding that the Family Court properly denied appellant’s request for DNA testing and dismissed the petition on the ground that the appellant failed to establish that he was induced by fraud, duress, or material mistake of fact to sign the acknowledgment]).
Although a challenge to an acknowledgment of paternity may be made only by a signatory, “[a] prior acknowledgment of paternity made in accordance with Family Court Act § 516-a does not serve as an insuperable bar to a claim of paternity by one who is a stranger to the acknowledgment” (Matter of Thomas T [Luba R.], 121 AD3d 800, 800 [2d Dept 2014], citing Matter of Dwayne J.B. v Santos H., 89 AD3d 838, 838 [2d Dept 2011]; Family Ct Act § 516-a [b] [iv]; Matter of Antony S.N.T. v Rosemarie B.T., 123 AD3d 835, 836 [2d Dept 2014]; Matter of Tyrone G. v Fifi N., 189 AD2d 8, 14 [1st Dept 1993]). Under Family Court Act § 522, a proceeding to establish the paternity of the child may be commenced by any person alleging to be the father. Thus, while an alleged father who is a non-signatory to an acknowledgment of paternity lacks standing under Family Court Act § 516-a to challenge such acknowledgment of paternity, vacatur of an existing acknowledgment of paternity is not a precondition to a different individual filing a petition seeking to be declared as the father (see Matter of Tyrone G. v Fifi N., 189 AD2d 8, 15 [1st Dept 1993]).
Discussion
Here, respondent seeks to vacate the acknowledgment of paternity which she executed on or about April 2, 2004. Contrary to respondent’s contention, the Support Magistrate did not err in denying respondent the opportunity to demonstrate through court-ordered DNA testing that petitioner is the *583 subject child’s biological father. As the Support Magistrate correctly noted, to prevail on her petition to vacate the acknowledgment of paternity, respondent has the burden of establishing fraud, duress, or material mistake of fact (see Matter of Sidney W. v Chanta J., 112 AD3d 950, 952 [2d Dept 2013] [“A party seeking to challenge an acknowledgment of paternity more than 60 days after its execution must prove that it was signed by reason of fraud, duress, or material mistake of fact”], quoting Matter of Angelo A.R. v Tenisha N.W., 108 AD3d 560, 560 [2d Dept 2013]).
There is no requirement that a court order genetic marker or DNA tests absent a showing of fraud, duress, or material mistake of fact (see Family Ct Act § 516-a; Matter of Miskiewicz v Griffin, 41 AD3d 853, 854-855 [2d Dept 2007] [“Where an individual challenging an acknowledgment of paternity more than 60 days after its execution ‘fails to meet the burden of proof on the issue of fraud, duress, or material mistake of fact, the court need not order a GMT to determine the child’s paternity’ ”], quoting Matter of Westchester County Dept. of Social Servs. v Robert W.R., 25 AD3d 62, 70 [2d Dept 2005]).
Indeed, ordering DNA testing absent a showing of fraud, duress, or material mistake of fact is contrary to the express language of Family Ct Act § 516-a (b) (iv), which provides for court-ordered DNA testing for the determination of the child’s paternity “[i]f the petitioner proves to the court that the acknowledgment of paternity was signed under fraud, duress, or due to a material mistake of fact”—and even then, DNA testing is permissible only if there is a determination that such testing is in the best interest of the child (see Matter of Westchester County Dept. of Social Servs. v Robert W.R., 25 AD3d 62, 72 [2d Dept 2005] [“(W)here a party meets his or her burden in establishing fraud, duress, or material mistake of fact, the court is then required to conduct a hearing on the best interests of the child before ordering (DNA testing)”]).
In his findings of fact, Support Magistrate Reaves correctly concluded that respondent failed to establish fraud, duress, or a material mistake of fact as a basis for vacating the paternity acknowledgment. Although respondent testified that Mr. S. is not the child’s father, respondent did not provide the court with sufficient information concerning the circumstances under which Mr. S. signed the acknowledgment of paternity. Notably, respondent did not establish that Mr. S. was forced to agree to sign the acknowledgment of paternity due to a wrongful threat *584 which overcame his free will (see Matter of Wimberly v Diabo, 42 AD3d 599, 600 [3d Dept 2007] [“To establish duress, petitioner had to show ‘that he was forced to agree to (sign the acknowledgment) by means of a wrongful threat which precluded the exercise of his free will’ ”], quoting Matter of Podmore v Our Lady of Victory Infant Home, 82 AD2d 48, 50 [1981]). Nor did respondent establish that Mr. S. executed the acknowledgment of paternity under the mistaken belief that he was the subject child’s father (cf. Matter of Derrick H. v Martha J., 82 AD3d 1236, 1237 [2d Dept 2011]). As there is no indication that Mr. S. was induced into signing the acknowledgment of paternity by fraud, duress, or due to a material mistake of fact, the Support Magistrate was under no obligation to order DNA testing and his dismissal of respondent’s petition to vacate the acknowledgment of paternity was proper.
Notwithstanding respondent’s failure to satisfy her burden on her petition to vacate the existing acknowledgment of paternity, petitioner remained entitled to independently seek to establish paternity pursuant to Family Court Act § 522 (see Matter of Emily R. v Emilio R., 53 Misc 3d 325, 334 [Fam Ct, Bronx County 2016]). It is well established that the existence of an acknowledgment of paternity does not bar a claim of paternity by a stranger to the acknowledgment (see Matter of Thomas T, [Luba R.], 121 AD3d 800 [2d Dept 2014]; Matter of Dwayne J.B. v Santos H., 89 AD3d 838 [2d Dept 2011]; Matter of Antony S.N.T v Rosemarie B.T., 123 AD3d 835 [2d Dept 2014]; Matter of Tyrone G. v Fifi N., 189 AD2d 8 [1st Dept 1993]).
Here, petitioner asserts that he is the subject child’s father, thereby challenging the ultimate issue of the subject child’s paternity. Respondent’s failure to vacate the existing acknowledgment of paternity does not necessitate automatic dismissal of petitioner’s paternity petition because the existence of an acknowledgment of paternity “does not serve as an insuperable bar” to petitioner’s claim of paternity (see Thomas T., 121 AD3d at 800; Dwayne J.B., 89 AD3d 838; Antony S.N.T., 123 AD3d 835; Tyrone G., 189 AD2d 8). Thus, it was error to dismiss petitioner’s petition seeking to establish paternity.
It was also error to proceed on petitioner’s petition without first directing that service be completed upon Mr. S., as he is named as the father of the subject child on the child’s birth certificate and is therefore a necessary party (see Thomas T., 121 AD3d at 801, citing CPLR 1001 [a]). As such, Mr. S. *585 should be joined as a respondent on petitioner’s petition “so that all persons whose interests are affected will be before the court” (id.).
Accordingly, this court hereby grants in part respondent’s objection inasmuch as petitioner’s paternity petition is reinstated and the matter is remitted to Support Magistrate Reaves for further proceedings, consistent with this opinion, on the alleged father’s petition.
Based on the foregoing, it is hereby ordered that respondent’s objection to Support Magistrate Reaves’ order of dismissals dated May 17, 2016 is granted in part.

. Petitioner filed the same objection in both paternity proceedings, which are consolidated here for decision as the information elicited in each proceeding overlaps and pertains to the same subject child.

. A printout from the Putative Father’s Registry denoting the existence of an acknowledgment of paternity of the subject child by Milciades S. is located in the court file. The printout included the registration number of the acknowledgment and notes a “Registrar Date” of April 6, 2004.

. Although service was deemed complete upon Mr. S., there is no affidavit of service in the court file.

. Social Services Law § 111-k (1) (a) provides, in relevant part, that
“[a] social services official . . . who confers with a potential respondent or respondent, . . . the mother of a child born out of wedlock and any other interested persons . . . may obtain . . . an acknowledgment of paternity of a child . . . by a written statement, witnessed by two people not related to the signator or as provided for in section four thousand one hundred thirty-five-b of the public health law.”
Social Services Law § 111-k (1) (a) further provides that “[u]pon the signing of an acknowledgment of paternity pursuant to this section, the social services official or his or her representative shall file the original acknowledgment with the registrar.”

. Public Health Law § 4135-b (1) (a) provides, in relevant part, that
“[i]mmediately preceding or following the in-hospital birth of a child to an unmarried woman, the person in charge of such hospital or his or her designated representative shall provide to the child’s mother and putative father, if such father is readily identifiable and available, the documents and written instructions necessary for such mother and putative father to complete an acknowledgment of paternity witnessed by two persons not related to the signatory. Such acknowledgment, if signed by both parties, at any time following the birth of a child, shall be filed with the registrar at the same time at which the certificate of live birth is filed, if possible, or anytime thereafter.”