ABBOTT L. WILEY, as Member of the Rensselaer County Legislature and Minority Leader Thereof, Appellant-Respondent, v LEO W. HOPE, as Clerk of the Rensselaer County Legislature, et al., Respondents-Appellants. (Action No. 1.)

JOSEPH C. MANUPELLA et al., Plaintiffs, v JAMES J. FITZGIBBONS et al., Defendants. (Action No. 2.)

Third Department, November 26, 1975

*Martin, Noonan, Hislop, Troue & Shudt (James T. Ronan* of counsel), for appellant-respondent.

*Bartle, McGrane, Duffy & Murray (Edward M. Murray* of counsel), for Leo W. Hope, respondent-appellant, and Joseph G. Manupella and others, plaintiffs.

*Marvin I. Honig, County Attorney,* for County of Rensselaer and others, respondents-appellants, and James J. Fitzgibbons and others, defendants.

*John E. Murray, County Attorney (Daniel L. Gorman* of counsel), for County of Broome, *amicus curiae.*

MAIN, J. Pursuant to subdivision A of rule 16 of its Standing Rules, the Rensselaer County Legislature (hereinafter, Legislature) designates its adopted resolutions as being either "General" or "Parliamentary". A "General" resolution, indicated by the prefix letter "G" before its number, is subject to the approval of the County Executive while a "Parliamentary" resolution, indicated by the prefix letter "P" before its number, is not subject to executive approval and relates to rules and regulations or other matters pertaining solely to the conduct of the Legislature's own procedures.

In both of these actions, the question presented is which, if any, of certain resolutions adopted by the Legislature must be submitted to the County Executive for his approval. The basic controversy pits the majority members of the Legislature

against the minority members of that body and the County Executive, and at issue are the "General" or "Parliamentary" designations placed upon the resolutions in question by the legislative majority.

Central to a solution of this dispute is an interpretation of section 3.06 of the Rensselaer County Charter (Local Laws, 1972, No 3 of County of Rensselaer) which provides, in pertinent part, for the submission to the County Executive for his approval of: "Every Local Law, Ordinance, and Resolution adopted by the County Legislature, except resolutions establishing rules and regulations or other matters pertaining solely to the conduct of its own procedures".

We find that this quoted language is clear and unambiguous and that its obvious intendment was the introduction into the County Legislative process of a system of checks and balances whereby both the Legislature and the County Executive have essential roles to play in the enactment of laws, ordinances and resolutions. The Municipal Home Rule Law specifically authorizes such a grant of veto power over legislation to a county executive officer (Municipal Home Rule Law, § 33, subd 4, par b), and the procedure in no way conflicts with the instant Charter's grant of ultimate power to the Legislature as the governing and policy-making body of County Government (Rensselaer County Charter, art 2, §§ 2.01, 2.07) since it merely regulates the number of votes necessary for the passage of legislation by requiring a favorable vote of at least two thirds of the entire membership of the Legislature to overturn an executive veto (Rensselaer County Charter, art 3, § 3.06, subd D; cf. *Smiley v Holm,* 285 US 355). Accordingly, we hold that, absent a conflicting constitutional or statutory provision or a superseding Charter provision, section 3.06 of the Charter requires that every resolution adopted by the Legislature, other than those pertaining solely to internal legislative operations, must be submitted to the County Executive for his approval.

From this general analysis, we now turn to the five resolutions which form the subject matter of the cross appeals. Adopted on January 14, 1975, they include: P/4/75 permitting Hudson Valley Community College (hereinafter, HVCC) to execute agreements for off-campus offerings; P/5/75 requesting extension of the night quarantine on dogs; P/6/75 appointing members of the Rensselaer County Fire Advisory Board, Deputy Fire Coordinators and Special Assistants; G/12/75

supporting proposed State legislation to permit real property tax installment payments for senior citizens without penalty; and G/13/75 urging enactment of State legislation decreasing the time limit that local municipalities must retain proceeds from the sale of abandoned vehicles.

As noted above, Special Term dismissed the petition challenging the "General" or "Parliamentary" designations placed on these five resolutions. In so ruling, it determined that P/4/75 and P/6/75 were properly designated as "Parliamentary". With regard to P/5/75, it ruled that the controversy was moot because that resolution was resubmitted and approved as a "General" resolution. Similarly, any questions relative to G/12/75 and G/13/75 were dismissed as academic since, pursuant to the Charter (Rensselaer County Charter, art 3, § 3.06, subd C), these resolutions became operative when the County Executive took no action on them within 10 days of their being submitted to him.

Upon our review, we consider initially P/4/75 and find that it should properly have been designated as a "General" resolution and submitted for executive approval. This resolution plainly does not relate to the internal procedures of the Legislature, but rather deals with the operation of HVCC. Moreover, although it was admittedly adopted in accordance with subdivision 7 of section 6306 of the Education Law which provides for the approval of such resolutions by "the local sponsor acting through its local legislative body or board, or other appropriate governing agency", we can see no conflict between this statutory provision and submission of the resolution to the County Executive. In this instance, approval by the "local legislative body" merely includes the County Executive's participation in the legislative process as provided for in the Charter, and the State Legislature obviously envisioned such a *modus operandi* because in defining the term "legislative body" it speaks of the "elective governing board or body * * * with jurisdiction to initiate and adopt local laws * * * whether or not such local laws * * * *require the approval of the elective chief executive officer*" (Municipal Home Rule Law, § 2, subd 7; emphasis added). In this manner, State law plainly provides that local laws may be subject to executive approval while leaving to each individual county the option of adopting such a procedure. Here, by voting to adopt their County Charter, the people of Rensselaer County have made their choice and opted for executive participation in the

county legislative process, except as to "matters pertaining solely to the conduct of [the Legislature's] own procedures".

With regard to P/6/75, we reach a contrary result and find that the resolution was properly designated as "Parliamentary". Again, we are faced with a resolution concerning matters other than the Legislature's internal operations, but this time section 3.06 of the Charter is superseded by section 18.03 of the Charter which deals specifically with the appointments in question and provides that they are to be made by the County Legislature with no mention of any role for the County Executive.

As to the final three resolutions, P/5/75, G/12/75 and G/13/75, we shall not disturb the court's decision to refrain from granting declaratory relief. Such relief "rests in the sound discretion of the court" (*Park Ave. Clinical Hosp. v Kramer,* 26 AD2d 613, affd 19 NY2d 958), and will not be granted in a moot case where there is no justiciable controversy (24 Carmody-Wait 2d, New York Practice, § 147:9).

Turning now to the submission, we find that it is concerned with three resolutions adopted on June 10, 1975, and they include: P/152/75 authorizing funds for the construction of a Health Science facility at HVCC; P/153/75 authorizing the purchase of land to be made a part of the HVCC campus; and P/154/75 adopting the HVCC budget for 1975–1976. That these resolutions involve major expenditures of taxpayers' moneys pertaining to various aspects of the county financing of HVCC and not the internal operations of the Legislature is readily apparent. Moreover, based upon the rationale set forth in our treatment of P/4/75, we find no conflict between article 126 of the Education Law and the submission of these resolutions for executive approval. Such being the case, these resolutions should properly have been designated as "General" and dealt with accordingly.

The judgment in Action No. 1 should be modified, on the law and the facts, without costs, by reversing so much thereof as determined that resolution P/4/75 was "Parliamentary" and declaring the same to be "General", and, as so modified, affirmed.

The judgment should be directed to be entered in Action No. 2, without costs, in favor of defendants, declaring that the resolutions involved are "General".

HERLIHY, P. J., GREENBLOTT, KANE and KOREMAN, JJ., concur.

Judgment in Action No. 1 modified, on the law and the facts, without costs, by reversing so much thereof as determined that resolution P/4/75 was "Parliamentary" and declaring the same to be "General", and, as so modified, affirmed.

Judgment directed to be entered in Action No. 2, without costs, in favor of defendants, declaring that the resolutions involved are "General".