In the Matter of THOMAS M. MONAHAN et al., Appellants, v WILLIAM J. MURPHY et al., Respondents.

Third Department, November 29, 1979

## APPEARANCES OF COUNSEL

*Connolly & Mirch (John E. Mirch* of counsel), for Thomas M. Monahan, appellant.

*Lee, Le Forestier, Malone, Smith & Hanft, P. C. (Richard A. Hanft* of counsel), for Joseph G. Manupella, appellant.

*Marvin I. Honig, County Attorney,* for respondents.

## OPINION OF THE COURT

MAHONEY, P. J.

A brief outline of the governmental structure of Rensselaer County is necessary for comprehension of the posited issue and its resolution.

Rensselaer County adopted a charter form of government in November of 1972 (Local Laws, 1972, No. 2 of County of Rensselaer). Section 2.01 of that law provides for a county legislature which "shall be the governing and policy making body of the county government." The charter also provides for a county executive who is "responsible for the proper administration of all county affairs placed in his charge" (Rensselaer County Charter, § 3.00). Section 3.06 of the charter provides that "[e]very local law, ordinance, and resolution adopted by the county legislature, except resolutions establishing rules and regulations or other matters pertaining solely to the conduct of its own procedures" must obtain the county executive's approval before becoming effective. In addition, the charter provides for a Rensselaer County Board of Elections, the commissioners of which "shall be appointed by the county legislature in accordance with the state Election Law" (Rensselaer County Charter, § 18.00).

On December 5, 1978 the county legislature passed Resolution P/296/78 which fixed the salaries of the County Election Commissioners at $11,666. Two days later, respondent County Executive William J. Murphy returned the resolution with his veto. On January 4, 1979 petitioners commenced this proceeding. In their petition, they allege that respondent Murphy had no power to veto the resolution and that the respondents threatened to implement a scheme to appoint employees of the Rensselaer County Board of Elections, to fix the duties and titles of such employees and to establish salaries for such employees.

Special Term, while conceding that the Election Law of this

State is a general law (NY Const, art IX, § 3, subd [d], par [1]; Municipal Home Rule Law, § 2, subd 5) and the Rensselaer County Charter provisions make up a local law (Municipal Home Rule Law, § 32, subd 2), nevertheless concluded that section 3.06 of the Rensselaer County Charter, which provides that all resolutions of the county legislature not pertaining to the conduct of that body are subject to executive veto, is not in conflict with section 3-208 of the Election Law which provides that "[e]ach election commissioner shall receive an annual salary to be fixed by the county legislative body". Special Term claims support for this position both in the Municipal Home Rule Law (§ 33, subd 4, par b), and in our decision in *Wiley v Hope* (49 AD2d 466, 468, mot for lv to app dsmd 39 NY2d 809). We disagree.

Section 34 (subd 3, par g) of the Municipal Home Rule Law governs the relationship between the Election Law and the Rensselaer County Charter. It provides that no county charter or charter law shall supersede the Election Law. We did not depart from this legislative directive in *Wiley v Hope (supra).* There, we were concerned with a "general" resolution passed by the county legislature dealing with the operations of the Hudson Valley Community College, which resolution "was admittedly adopted in accordance with subdivision 7 of section 6306 of the Education Law which provides for the approval of such resolutions by 'the local sponsor acting through its local legislative body or board, or other appropriate governing agency' " (49 AD2d 466, 469). Reference to the definitional section of the Municipal Home Rule Law (§ 2, subd 7) mandated the employment of the definition of a legislative body as "[t]he board of supervisors * * * or other elective governing board * * * vested by state statute * * * with jurisdiction to initiate and adopt local laws or ordinances, *whether or not such local laws or ordinances require the approval of the elective chief executive officer"* (emphasis added). Here however, we are not concerned with a State statute, as in *Wiley,* that requires resort to the general provisions of the Municipal Home Rule Law for guidance with respect to the operations of a local legislative body. Rather, we are dealing with a State statute, the Election Law, which reflects an intensive legislative approach to component procedures comprising the electoral process to the end that a structured, systematic scheme is created embodying the essential principles guaranteeing the expression of the will of the electorate. To further that purpose and to insure that boards or bodies with legislative

powers be precisely defined, the Election Law provides in subdivision 16 of section 1-104 that "[t]he term 'county legislative body' *shall mean the elected governing body of a county*" (emphasis added). Therefore, when the command of section 3-208 of the Election Law to the effect that "[e]ach election commissioner shall receive an annual salary *to be fixed by the county legislative body*" (emphasis added) is juxtaposed to the only permissible definition of such body (Election Law, § 1-104, subd 16), it inexorably follows that such fixation of salaries is not subject to executive veto.

Next, respondents' contention that the county legislature permanently fixed the annual salary of petitioner Monahan at $3,200 when it passed the annual budget without changing that line item is without merit since implicit in such contention is the erroneous assumption that the Legislature is powerless to modify a prior act. Nothing in the Election Law prohibits amendment of the salary of an election commissioner. Having the power to fix such a salary (Election Law, § 3-208), no reason exists that would prevent a change.

The judgment should be reversed, on the law, with costs, and the petition should be granted to the extent that respondents are directed to compensate petitioner Monahan pursuant to Rensselaer County Legislature Resolution No. P/296/78, dated December 5, 1978.

GREENBLOTT, SWEENEY, KANE and STALEY, JR., JJ., concur.

Judgment reversed, on the law, with costs, and petition granted to the extent that respondents are directed to compensate petitioner Monahan pursuant to Rensselaer County Legislature Resolution No. P/296/78, dated December 5, 1978.