DIANE YATAURO et al., Plaintiffs/Petitioners-Respondents-Appellants, v EDWARD P. MANGANO et al., Defendants/Respondents-Appellants-Respondents, and WILLIAM T. BIAMONTE et al., Defendants/Respondents-Respondents. [928 NYS2d 561]—

Seven members of the Nassau County Legislature (hereinafter collectively the plaintiffs/petitioners) commenced this hybrid action/proceeding, inter alia, for a judgment declaring, among other things, that the implementation of Local Law No. 3-2011 of County of Nassau (hereinafter Local Law 3-2011) in connection with the general election to be held on November 8, 2011, is null and void for lack of compliance with sections 112, 113, and 114 of the Nassau County Charter (hereinafter the Charter). The plaintiffs/petitioners contend that Local Law 3-2011, which redrew the metes and bounds of the County's 19 legislative districts based on the results of the 2010 decennial federal census (U.S. Dept. of Commerce, Census Bureau, Census of Population and Housing, 2010) fails to comply with the requirements of Charter §§ 112, 113, and 114, which establish a three-step process by which the County Legislature may redistrict on a decennial basis. William T. Biamonte, a Commissioner of the Nassau County Board of Elections, who is named as a defendant/respondent in this hybrid action/proceeding, has filed a brief in support of the position taken by the plaintiffs/petitioners.

The remaining named defendants/respondents in this hybrid action/proceeding are 11 members of the Nassau County Legislature, Edward P. Mangano, in his capacity as Nassau County Executive, William J. Muller, in his capacity as Clerk of the Nassau County Legislature, the Nassau County Legislature, and the County of Nassau (hereinafter collectively the appellants), and Louis G. Savinetti, a Commissioner of the Nassau County Board of Elections. The appellants contend that Local Law 3-2011 complies with section 112 of the Charter, which explicitly requires the legislature to adopt a local law describing the 19 county legislative districts, based upon the release of decennial federal census data, within six months of public announcement of such census data, and that nothing contained in sections 112, 113, or 114 prohibits or precludes the immediate implementation of the newly described legislative districts.

The Supreme Court agreed, in part, with the plaintiffs/petitioners and agreed, in part, with the appellants. In the order and judgment appealed and cross-appealed from, the Supreme Court held that there was no basis within the Charter itself, the legislative intent or history of sections 112, 113, and 114 of the Charter, or the established past practice of the County Legislature, to support the appellants' contention that a local law, describing the new metes and bounds of the 19 districts, adopted in compliance with section 112, may be implemented immediately and, specifically, that there was no basis to implement Local Law 3-2011 in connection with the upcoming 2011 general election. Rather, the Supreme Court held that a plain reading of the sections establishes that the adoption of Local Law 3-2011 was simply the first of three steps to be taken by the County Legislature before redistricting may be effectively completed, in time for the 2013 general election. However, contrary to the plaintiffs/petitioners' contention, the Supreme Court declared that the adoption of Local Law 3-2011 did comply with the requirements of section 112.

In 1994, the Charter was significantly amended by the adoption of Local Law No. 11-1994 of County of Nassau (adopted on November 8, 1994; effective January 1, 1996), which was a response to a constitutional challenge to the structure of the government and system of weighted voting in Nassau County (see Jackson v Nassau County Bd. of Supervisors, 818 F Supp 509 [1993]). Local Law No. 11-1994 of County of Nassau, which was adopted by public referendum, changed the form, powers, structure, and districts of a new County Legislature, including, but not limited to, eliminating the six member Board of Supervisors and replacing it with 19 single member districts. Sections 112, titled "Legislative districts," 113, titled "Temporary districting advisory commission; appointment; terms; vacancies; powers and duties; hearings; and approval of plan," and 114, titled "The County Legislature to adopt plan," were also added to the Charter at that time to provide the process by which redistricting of the legislative electoral districts of the County would be handled in the future, in connection with the decennial census.

Section 112 states, in relevant part:

"1. The nineteen county legislative districts shall be set forth in the map attached hereto as Annex A, bounded and described in said Annex A.

"2. The County Legislature shall within six months after public announcement of the enumeration of the inhabitants of Nassau County in each decennial federal census commencing

with the federal census for the year 2000, adopt a local law amending Annex A hereto to describe the nineteen county legislative districts which shall be based upon the new census data. Such local law shall comply with the legal and constitutional requirements for equal representation in the County Legislature of the residents of the county.

"3. If, as a result of a readjustment or alteration of the county legislative districts as provided in subdivision two of this section, any county legislator shall no longer reside within the boundary lines of the county legislative district such county legislator represents, then, unless such county legislator shall, within twelve months of the effective date of such readjustment or alteration, change such person's residence so as to reside within the boundary lines of such county legislative district, such county legislator shall cease to hold such office, and the vacancy in such office shall be filled in the manner provided in section one hundred eight." (Nassau County Charter [hereinafter Charter] § 112.)

Section 113 states, in relevant part:

"1. (a) There shall be a temporary districting advisory commission established each legislative term in which the legislature is required to reapportion the county legislative districts as a result of the federal decennial census . . . The appointment of members of the temporary districting advisory commission shall be made no earlier than one year and eight months before, and no later than one year and six months before, the general election of the county legislators to be held in the year, two thousand and three and every ten years thereafter in accordance with the provisions of this section . . .

"2. The temporary districting advisory commission may recommend one or more plans to the county Legislature for dividing the county into legislative districts for the election of county legislators which plan shall comply with applicable law. The temporary districting advisory commission is authorized to hire experts, counsel, consultants and staff as provided for in the budget of the County Legislature and as the temporary districting advisory commission deems necessary. Agencies and departments of county government shall be required to provide technical assistance to the commission.

"3. . . . The temporary districting advisory commission shall conduct all meetings in accordance with applicable law and may hold public hearings to develop a redistricting plan.

"4. No later than ten months before the general election of the County Legislature, the temporary districting advisory commission shall transmit its recommendations and any and all

plans for dividing the county into districts to the County Legislature. All recommendations from the temporary districting advisory commission shall be available for public inspection at the office of the clerk of the County Legislature." (Charter § 113.)

Section 114 states, in relevant part:

"The County Legislature may reject, adopt, revise or amend the redistricting plan recommended by the temporary districting advisory commission or adopt any other redistricting plan, provided that any plan adopted by the County Legislature shall meet all constitutional and statutory requirements. The County Legislature, shall, no later than eight months before such general election of the County Legislature, prepare and adopt by local law a final plan for the redistricting of the County Legislature." (Charter § 114.)

In interpreting a statute, the starting point of analysis must be the plain meaning of the statutory language, since it is the " 'clearest indicator of legislative intent' " (*Matter of Pro Home Bldrs., Inc. v Greenfield*, 67 AD3d 803, 805 [2009], quoting *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]). "A statute or legislative act is to be construed as a whole, and all parts of an act are to be read and construed together to determine the legislative intent" (*Frank v Meadowlakes Dev. Corp.*, 6 NY3d 687, 691 [2006], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 97). The "legislative intent is to be ascertained from the words and language used, and the statutory language is generally construed according to its natural and most obvious sense, without resorting to an artificial or forced construction" (*Frank v Meadowlakes Dev. Corp.*, 6 NY3d at 692, quoting McKinney's Cons Laws of NY, Book 1, Statutes § 94). "Whenever practicable, the court must give effect to all the language employed; a statute must be read so that each word therein will have a meaning and not so that one word or sentence will cancel or render meaningless another word or sentence" (McKinney's Cons Laws of NY, Book 1, Statutes § 98 [a]; *see Rangolan v County of Nassau*, 96 NY2d 42, 47 [2001] ["where . . . the Legislature uses different terms in various parts of a statute, courts may reasonably infer that different concepts are intended"]; *see also* McKinney's Cons Laws of NY, Book 1, Statutes § 231 ["In the construction of a statute, meaning and effect should be given to all its language, if possible, and words are not to be rejected as superfluous when it is practicable to give to each a distinct and separate meaning"]).

Here, the Supreme Court properly declared that the adoption of Local Law 3-2011 was in accordance with the requirements

of Charter § 112. The legislature, as required, adopted a local law amending Annex A to describe the 19 legislative districts, based upon the new census data, and did so within six months of the announcement of the census data.

While the Supreme Court properly held that Charter § 112 authorized the County Legislature to "provid[e] the new metes and bounds of [the] 19 county legislativ districts based upon the new census data," the court erred in concluding that the resultant metes and bounds would only constitute "new *proposed* legislative districts" (emphasis added). In reaching this conclusion, the court overlooked a crucial term used in section 112, to wit, "amend." Since Charter § 112 required the County Legislature to formally amend Annex A, ultimately striking out the prior legal description of the 19 legislative districts and inserting new legal descriptions, we conclude that the drafters of Charter § 112 did not intend the legislature's act to be merely a proposal, without immediate effect, subject to the completion of a three-step redistricting process.

Our conclusion is supported by subdivision (3) of Charter § 112, which provides that any county legislator no longer residing within the boundary lines of his or her district as readjusted by a local law adopted pursuant to section 112 (2) "shall" move to a residence within the new district lines within 12 months of the "effective date of such readjustment" or cease to hold such office. The term "effective date" expressly refers to "such readjustment" which is effected by the local law adopted pursuant to Charter § 112 (2). Thus, we do not agree with our dissenting colleagues that the term "effective date" refers to the adoption of the final redistricting plan pursuant to the distinct provisions in Charter § 114. Further, the Charter provision cited by the dissent, section 104 (4), does not support an interpretation of "effective date" in section 112 (3) to mean the effective date of the final redistricting plan. Section 104 (4) provides, inter alia, that each legislator "shall reside in the county legislative district which such person represents at the time of such person's nomination for office," but does not speak to the effective date of the delineation of the boundaries of such legislative districts.

Nor do we agree with the conclusion reached by our dissenting colleagues that Local Law 3-2011 is inconsistent with, or purports to supersede, the Election Law in contravention of New York Constitution, article IX, § 2 (c) (ii) (1) and Municipal Home Rule Law § 34 (3) (g). Election Law § 4-106 (2) requires a county clerk to certify, at least eight months prior to the general election, each county office to be voted for at such election. That

section simply does not address district boundaries, much less does it provide that the county clerk's certification of the offices "effectively incorporate[s] the description and boundaries of the legislative districts those offices represented at the time of the certification," as the dissent suggests. Nor does any case law support such a conclusion.

We base our analysis on the record that was before the Supreme Court at the time the motion was fully submitted, including facts concerning a clerk item proposed by certain legislators on July 11, 2011, purportedly to correct errors in the legal description of the metes and bounds, without changing the district lines, enacted in Local Law 3-2011. Our dissenting colleagues note that the clerk item was enacted as Local Law No. 7-2011 of the County of Nassau (Local Law 7-2011) subsequent to the date of the order appealed from, a matter which is dehors the record and not properly before us (*see Transaero, Inc. v Biri Assoc. Corp.*, 39 AD3d 738, 739 [2007]; *Wilson v Wilson*, 21 AD3d 548, 549 [2005]). The principle that an appellate court must apply the law as it exists at the time an appeal is decided is inapplicable to the circumstances here, since the subsequently enacted Local Law 7-2011 is not dispositive of the issue before us, namely the interpretation of Charter §§ 112, 113, and 114 (*cf. Matter of Demisay, Inc. v Petito*, 31 NY2d 896, 897 [1972]; *Matter of Millerton Props. Assoc. v Town of N.E. Zoning Bd. of Appeals*, 227 AD2d 562, 562 [1996]). Local Law 3-2011 was passed on May 24, 2011, after a public hearing, in advance of the petitioning process which began on June 7, 2011. Even taking judicial notice of Local Law 7-2011 (*see* CPLR 4511; *Hunter v New York, Ontario & W. R.R. Co.*, 116 NY 615, 621 [1889]), it does not represent an "actual manifestation" of further redistricting after the petitioning process had concluded, as the dissent suggests, in light of the appellants' contention, not reached or resolved here, that Local Law 7-2011 merely clarified the legal description of metes and bounds in Local Law 3-2011 without changing the district lines. We decline to speculate as to theoretical implementations of Charter § 112 later in the petitioning and primary process or the political motivations which might drive them. We are guided in our analysis by principles of statutory construction. Courts, in construing statutes, should avoid judicial legislation; we do not sit in review of the discretion of the county legislature, nor do we determine the expediency, wisdom, or propriety of its action on matters within its powers (*see Pajak v Pajak*, 56 NY2d 394, 397 [1982]; McKinney's Cons Laws of NY, Book 1, Statutes § 73).

Since the amendment of Annex A pursuant to the procedure

set forth in Charter § 112 became effective immediately, pursuant to the Legislature's statement that the "Local Law shall take effect immediately upon filing with the Secretary of State pursuant to Section 27 of the New York State Municipal Home Rule Law" (Local Law 3-2011 § 3; *see Aijaz v Hillside Place, LLC*, 37 AD3d 501 [2007]), as of May 25, 2011, Annex A, as amended, constituted the only effective legal description of the bounds of the County's 19 legislative districts. Nothing in Local Law 3-2011 or Charter §§ 112, 113, or 114 requires that the amendment of Annex A must be held in abeyance until the completion of the steps described in Charter §§ 113 and 114, before it may become effective. Therefore, the legislative districts described in the recently amended Annex A became effective upon the enactment of Local Law 3-2011 and remain in effect until such date as Annex A is further amended. Accordingly, we reverse the order and judgment insofar as appealed from, and declare that the legislative boundaries described in Annex A, as amended by Local Law 3-2011, must be implemented in connection with the general election to be held on November 8, 2011. Rivera, J.P., Angiolillo and Dickerson, JJ., concur.

Cohen, J., concurs in part and dissents in part, and votes to affirm the order and judgment insofar as appealed and cross-appealed from, with the following memorandum, in which Miller, J., concurs:

I respectfully dissent from the majority's reversal of the order and judgment insofar as appealed from. This case involves an appeal by Edward P. Mangano, in his capacity as Nassau County Executive, Peter J. Schmitt, John J. Ciotti, Denise Ford, Francis X. Becker, Jr., Howard J. Kopel, Vincent T. Muscarella, Richard J. Nicolello, Norma L. Gonsalves, Joseph V. Belesi, Dennis Dunne, Sr., and Rose Marie Walker, individually and in their capacity as members of the Nassau County Legislature, William J. Muller, in his capacity as Clerk of the Nassau County Legislature, the Nassau County Legislature, and the County of Nassau (hereinafter collectively the appellants), and a cross appeal by Diane Yatauro, Judith A. Jacobs, Kevan Abrahams, Robert Troiano, Jr., Judi Bosworth, Wayne H. Wink, Jr., and David Denenberg (hereinafter collectively the plaintiffs/petitioners) from an order and judgment (one paper) of the Supreme Court, Nassau County (Jaeger, J.), entered July 21, 2011.

I conclude that the Supreme Court properly determined that the adoption, on May 24, 2011, of Local Law No. 3-2011 of County of Nassau (hereinafter Local Law 3-2011), which amended the 19 legislative districts, was the initial step in a

legislatively prescribed three-step redistricting process which did not apply to alter the districts for the 2011 election. The result urged by the appellants would contravene past legislative practice, result in multiple redistricting changes, and contravene state law by permitting the Nassau County Legislature to amend the boundaries of the legislative districts after the start of the election process. Such an outcome would work to deprive the voters of Nassau County of the constitutional safeguards afforded by the second two steps of the three-step redistricting process. Consideration of these constitutional safeguards, the clear language of the Nassau County Charter (hereinafter the Charter), the State Election Law, and common sense all compel me to reject the redistricting scheme advanced by the appellants and accepted by the majority. Accordingly, I vote to affirm the order and judgment insofar as appealed and cross-appealed from.

Having its prior method of local governance ruled unconstitutional and in violation of the "one person, one vote" rule (*Jackson v Nassau County Bd. of Supervisors*, 818 F Supp 509, 535 [1993]), on November 8, 1994, the voters of Nassau County adopted—by referendum—the form, powers, structure, and districts of a new "Nassau County Legislature" (*see* Local Law No. 11-1994 of County of Nassau [hereinafter Local Law 11-1994]).

As amended by Local Law 11-1994, the Charter provided for 19 legislative districts to be set forth in a map known as "Annex A" (Nassau County Charter [hereinafter Charter] § 112 [1]), each represented by one legislator (*see* Charter § 104 [1]). Included in the voter-approved changes to the Charter was a three-step process by which the legislative districts would be redrawn every 10 years in response to new data gathered during the decennial federal census (*see* Charter §§ 112-114).

Following the decennial federal census released in 2001, the aforementioned three-step process was implemented, resulting in the passage of Local Law No. 2-2003 of County of Nassau (hereinafter Local Law 2-2003), which altered the 19 legislative districts first effective in the 2003 general election.

On March 3, 2011, pursuant to Election Law § 4-106 (2), the Nassau County Clerk (hereinafter the County Clerk) filed a certificate with the Nassau County Board of Elections setting forth each county office to be voted for at the November 8, 2011, general election, with the offices of the 19 members of the County Legislature listed by legislative district. On the date that the County Clerk's certification was made to the Nassau County Board of Elections, the physical parameters and legal descrip-

tion of the boundaries of the 19 legislative districts of Nassau County were defined and set forth in Annex A of the Charter, created by Local Law 11-1994 and last amended by Local Law 2-2003.

On April 1, 2011, the 2010 decennial federal census results were released. On May 24, 2011, the County Legislature passed Local Law 3-2011, which, by its terms, amended, pursuant to Charter § 112 (2), the physical parameters and legal description of the boundaries of the 19 legislative districts set forth in Annex A of the Charter, created by Local Law 11-1994 and last amended by Local Law 2-2003. Local Law 3-2011, if immediately implemented, transfers hundreds of thousands of individuals into newly formed legislative districts throughout Nassau County.

In conjunction with the primary elections to be held on September 13, 2011, and within the parameters set forth in the County Clerk's certification: commencing June 7, 2011, individuals were permitted to begin collecting signatures on designating petitions (see Election Law § 6-134 [4]), for filing no later than July 14, 2011 (see Election Law § 6-158 [1]); commencing June 28, 2011, individuals were permitted to begin collecting signatures on petitions for an opportunity to ballot in the primary election (see Election Law § 6-164), for filing no later than July 21, 2011 (see Election Law § 6-158 [4]); and commencing July 12, 2011, individuals were permitted to begin collecting signatures on independent nominating petitions (see Election Law § 6-138 [4]), for filing no later than August 23, 2011 (see Election Law § 6-158 [9]).

Thereafter, on July 25, 2011, 11 days after the close of the period for filing designating petitions, the County Legislature passed Local Law No. 7-2011 of County of Nassau (hereinafter Local Law 7-2011). Local Law 7-2011 stated that the map of the legislative districts as set forth in Annex A of the Charter, as amended by Local Law 3-2011, was "correct" and "accurate," but that "technical corrections to the metes and bounds descriptions of that map" were necessary (Local Law 7-2011 § 1). The County Legislature "amended" Annex A by setting forth new metes and bounds descriptions (Local Law 7-2011 § 2). Local Law 7-2011 was to "take effect immediately" and "[the] act and the said Legislative Districts [were] deemed to have been effective on the date of enactment of [Local Law 3-2011], May 24, 2011" (Local Law 7-2011 § 5).

The plaintiffs/petitioners commenced this hybrid action and proceeding for, inter alia, a judgment declaring that the description and boundaries of the 19 legislative districts contained in

Annex A of the Charter, as amended by Local Law 3-2011, were not effective for the purposes of the 2011 general election to be held on November 8, 2011. The plaintiffs/petitioners contended, among other things, that the implementation of Local Law 3-2011 in the 2011 general election would violate the three-step process delineated by Charter §§ 112, 113, and 114, and otherwise violate the laws and constitution of New York State.

The appellants asserted that Local Law 3-2011 complies with Charter § 112, which explicitly requires the County Legislature to adopt a local law amending the description of the 19 legislative districts within six months of public announcement of the decennial federal census data, and that nothing contained within sections 112, 113, or 114 prohibits or precludes the immediate implementation of the newly described legislative districts.

The Supreme Court declared that the adoption of Local Law 3-2011 to amend Annex A was in accord with Charter § 112 as the first step of the three-step process. However, the court concluded that the legislative districts described in Local Law 3-2011 would only constitute "new proposed legislative districts" and declared that "implementation of Local Law 3-2011 . . . for use in the 2011 general election, is null and void for lack of compliance with §§ 113 and 114 of the Nassau County Charter." The court determined that new legislative districts based on the 2010 census data could not be utilized until the 2013 general election and that the legislative districts as set forth in Local Law 2-2003 remained in effect for the 2011 general election.

I agree that, when interpreting a statute, the starting point of analysis must be the plain meaning of the statutory language, since it is the " 'clearest indicator of legislative intent' " (*Matter of Pro Home Bldrs., Inc. v Greenfield*, 67 AD3d 803, 805 [2009], quoting *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]). Moreover, "[i]n construing a statute, 'each part of a statute is to be given meaning and be interpreted so as to avoid absurd results' " (*Matter of Westchester County Dept. of Social Servs. v Robert W.R.*, 25 AD3d 62, 68 [2005], quoting *Matter of Anderson v Board of Educ. of City of Yonkers*, 46 AD2d 360, 364 [1974], *affd* 38 NY2d 897 [1976]; *see* McKinney's Cons Laws of NY, Book 1, Statutes §§ 92, 145). "A general rule of statutory interpretation is to provide a construction which harmonizes the various provisions of a statute with each other and with the general intent of the statute" (*Matter of Westchester County Dept. of Social Servs. v Robert W.R.*, 25 AD3d at 68-69; *see* McKinney's Cons Laws of NY, Book 1, Statutes §§ 96, 97, 98 [a]).

Accordingly, I agree with the Supreme Court that Charter §§ 112, 113, and 114 establish a three-step redistricting process that takes place over the course of almost two years. These sections of the Charter, when read together and in light of the election process delineated by the State Election Law, lead us to conclude that the adoption of Local Law 3-2011 did not render the new districts applicable to the 2011 general election and that the legislative districts as set forth in Local Law 2-2003 remain in effect for that purpose.

While the first step of the redistricting process requires the County Legislature to "adopt a local law amending Annex A hereto to describe the nineteen county legislative districts which shall be based upon the new census data" (Charter § 112 [2]) within "six months after public announcement of . . . each decennial federal census" (*id.*), to permit such a change to become immediately effective for the purpose of the 2011 election leads to an absurd result. Accepting the appellants' position would mean that a majority of the County Legislature could, and in this case still may, redraw the legislative districts as late as October 1, 2011—a date *after* the primary election has occurred (*see* Election Law § 8-100 [1] [a]).

My consideration of the practical impact of the appellants' construction is not an exercise in theoretical speculation. On July 25, 2011, the County Legislature again amended Annex A and changed the legislative districts well after the period for filing designating petitions had come to a close. I find it appropriate to consider the state of the local law as it exists at the time this appeal is decided (*see* CPLR 4511; Prince, Richardson on Evidence § 2-305 [Farrell 11th ed]; *see generally Matter of Demisay, Inc. v Petito*, 31 NY2d 896, 897 [1972]; *Matter of Millerton Props. Assoc. v Town of N.E. Zoning Bd. of Appeals*, 227 AD2d 562, 562 [1996]). Moreover, given the importance of this appeal in this and future elections, I do not hesitate to acknowledge the reality of the circumstances which confront the people of Nassau County insofar as these circumstances are undisputed and exist in the public record (*see Hunter v New York, Ontario & W. R.R. Co.*, 116 NY 615, 621 [1889]; *Matter of Pi.*, 86 AD3d 542 [2011]). A refusal to take judicial notice of the actual manifestation of my "theoretical" concerns would lead to a result that justice cannot countenance and that I will not endorse.

This most recent example of the district redrawing exemplifies the absurd results that the appellants' construction would entail. The appellants' construction would not only foster the potential, but would provide an incentive, for political gamesmanship that would compel candidates to campaign within shift-

ing political units while subjecting the electorate to uncertainty and confusion. The Election Law does not authorize such a result.

"[T]he State Constitution grants significant autonomy to local governments to act with respect to local matters" (*Patrolmen's Benevolent Assn. of City of N.Y. v City of New York*, 97 NY2d 378, 385-386 [2001] [internal quotation marks omitted]). However "Article IX, § 2 of the State Constitution grants the [State] Legislature authority to enact a 'general law' relating to the property, affairs or government of local governments" (*id.* at 385, quoting NY Const, art IX, § 2 [b] [2]). The Election Law is a general law, since it "applies alike to all counties" (NY Const, art IX, § 3 [d] [1]; *see Matter of Monahan v Murphy*, 71 AD2d 92, 94 [1979], *affd* 51 NY2d 807 [1980]).

The New York Constitution further provides that "every local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to . . . [t]he powers, duties, qualifications, number, mode of selection and removal, [and] terms of office . . . of its officers and employees" (NY Const, art IX, § 2 [c] [ii] [1]).

Accordingly, Nassau County was not delegated the power to enact local laws inconsistent with the Election Law (*see Davis Constr. Corp. v County of Suffolk*, 95 AD2d 819, 820 [1983]). This conclusion is consistent with Municipal Home Rule Law § 34, which states that "a county charter or charter law shall not supersede . . . [the] election law" (Municipal Home Rule Law § 34 [3] [g]; *see Matter of Monahan v Murphy*, 71 AD2d at 94; *cf.* Election Law § 1-102).

Election Law § 4-106 (2) requires that, at least eight months before each general election, a county clerk transmit to the appropriate board of elections a certificate stating, among other things, each county office to be voted for at such election in that county. That certification constitutes the formal description of the County offices to be filled at a general election (*accord Matter of Broda v Monahan*, 309 AD2d 959 [2003]).

Here, the County Clerk certified the offices of the County Legislature for each of the 19 legislative districts which were to be the subject of the 2011 general election, and the certification effectively incorporated the description and boundaries of the legislative districts those offices represented at the time of the certification. When the time period prescribed in Election Law § 4-106 (2) elapsed, the process by which those offices would be filled was commenced (*see Matter of Engel v Board of Elections of State of N.Y.*, 144 AD2d 175, 176 [1988]). After that time,

those legislative districts could not be altered by local law since to do so would be to authorize certification in contravention of the Election Law (*see generally Matter of Monahan v Murphy*, 71 AD2d at 94).

The appellants assert that the certification merely signaled that 19 legislative offices were to be filled in the 2011 general election and that these legislative offices serve merely as generic placeholders somehow divorced from the geographical boundaries they represent. If this argument were to be accepted, the people of Nassau County would have no knowledge of their own legislative district and the election process would effectively be pushed back from the date of certification to the moment when further redistricting was foreclosed. Put simply, by amending Annex A after the election process has begun, the County Legislature has injected uncertainty into a fundamental aspect of the election, to wit, the people and region each legislative office is to represent. This uncertainty will continue to loom over the election process until October 1, 2011, inasmuch as the appellants' construction places no other limitation on the legislature's power to redraw the lines of the upcoming contest.

Since Charter § 112 (2) does not make reference to the time periods contained in the Election Law, attempts to immediately implement new legislative districts pursuant to that section will consistently run afoul of the Election Law and therefore be rendered unenforceable. Such an outcome supports the conclusion that amendments adopted pursuant to Charter § 112 (2) are not to be utilized for elections until the other steps in the redistricting process have occurred (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 144; *see also Johanns v Ficke*, 224 NY 513, 519 [1918]).

Unlike Charter § 112 (2), Charter §§ 113 and 114 are written to operate smoothly with the same time periods provided in the Election Law to protect the mandated constitutional safeguards, which must be afforded to the voters of Nassau County. The members of a temporary districting advisory commission (hereinafter Temporary Advisory Committee) are to be appointed "no earlier than one year and eight months before, and no later than one year and six months before, the general election of the county legislators to be held in the year two thousand and three and every ten years thereafter" (Charter § 113 [1] [a]). The Temporary Advisory Committee must transmit its recommendations and any and all plans for dividing the county into districts to the County Legislature "[n]o later than ten months before the general election" (Charter § 113 [4]).

Moreover, the County Legislature is required to prepare and

adopt by local law, a final plan for the redistricting of the County Legislature "no later than eight months before such general election of the County Legislature" (Charter § 114). As the Supreme Court observed, this time period corresponds exactly to the period set forth in Election Law § 4-106 (2), and would permit the County Clerk to file the certification of the offices to be filled in compliance with that section.

The appellants' contention that these new districts should be utilized in the upcoming election ignores the procedure of the aforementioned three-step redrawing process (*see* Charter §§ 112-114), ignores the import of the County Clerk's statutorily mandated certification (*see* Election Law § 4-106 [2]), and ignores the time-sensitive flurry of petition activity already conducted. Indeed, the appellants would instead have these "new" legislative districts, which transfer approximately 500,000 individuals throughout Nassau County, as the subject of the September 13, 2011, primary and the November 8, 2011, general election.

The appellants maintain that Charter § 112 (3) conclusively demonstrates that any changes made pursuant to Charter § 112 (2) are to be given immediate effect in any subsequent elections. However, although that subdivision refers to "a readjustment or alteration of the county legislative districts as provided in [Charter § 112 (2)]," the subdivision does not apply until the occurrence of "the effective date" of such a change (Charter § 112 ▮). I construe "effective date" to refer to the adoption of the final redistricting plan pursuant to Charter § 114 (*accord* Charter § 104 [4]). Thus, I disagree with the appellants' arguments that this subsection cannot be otherwise reconciled.

Furthermore, to place such import on a small measure clearly intended to protect and benefit incumbent legislators misses the point of the entire redistricting scheme. The immediate implementation of the "new" legislative districts would deprive the people of Nassau County of the benefit of the constitutional safeguards afforded by the bipartisan Temporary Advisory Committee, along with the public hearings, notices, hired experts, and demographers set forth in Charter §§ 113 and 114. Thus, for at least a two-year period, the appellants would have us sacrifice these important procedural safeguards to a measure intended to benefit only the legislators themselves. This two-year period would represent the first and only time that the people of Nassau County have been deprived of these safeguards.

The construction I advocate here is consistent with Charter § 113 (1) (a), which requires the legislature to establish a Temporary Advisory Committee in "each legislative term in

which the legislature is required to reapportion the county legislative districts as a result of the federal decennial census." Since section 113 (1) goes on to set forth specific dates keyed to the 2003 election and every 10 years thereafter, the overall scheme only requires reapportionment in those years. It is difficult to reconcile this prescribed 10-year cycle with the appellants' assertion that each cycle should contain multiple redistricting implemented at successive elections.

Finally, my construction of Charter § 112 (2) does not render that subdivision superfluous. The adoption of amendments to the legislative districts pursuant to that subdivision constitutes the County Legislature's endorsement of a particular plan and will serve as a starting point for public dialogue and the consideration to be afforded by the Temporary Advisory Committee. Thus, Charter § 112 (2) serves as an important first step in the three-step process devised to ensure a fair and equitable means of reapportionment.

In sum, I conclude that the Supreme Court properly determined that the adoption, on May 24, 2011, of Local Law 3-2011, which amended the 19 legislative districts, was the initial step in a legislatively prescribed three-step redistricting process, which did not apply to alter the districts for the 2011 general election. Accordingly, I would affirm the order and judgment insofar as appealed and cross-appealed from.

---

Motion by Edward P. Mangano, in his capacity as Nassau County Executive, Peter J. Schmitt, John J. Ciotti, Denise Ford, Francis X. Becker, Jr., Howard J. Kopel, Vincent T. Muscarella, Richard J. Nicolello, Norma L. Gonsalves, Joseph V. Belesi, Dennis Dunne, Sr., and Rose Marie Walker, individually and in their capacity as members of the Nassau County Legislature, William J. Muller, in his capacity as Clerk of the Nassau County Legislature, the Nassau County Legislature, and the County of Nassau to stay enforcement of an order and judgment (one paper) declaring that the implementation of Local Law No. 3-2011 of County of Nassau in connection with the general election to be held on November 8, 2011, is null and void, pending hearing and determination of an appeal and cross appeal from the order and judgment of the Supreme Court, Nassau County, entered July 21, 2011.

Upon the papers filed in support of the motion and the papers filed in opposition thereto, and upon the argument of the appeal and cross appeal, it is

Ordered that the motion is denied as academic in light of our

determination on the appeal and cross appeal. Rivera, J.P., Angiolillo, Dickerson, Cohen and Miller, JJ., concur.